STATE of Wisconsin, Plaintiff-Respondent,

v.

Ali MURSAL, Defendant-Appellant.†

Court of Appeals

*No. 2012AP2775–CR. Submitted on briefs September 3, 2013.*
*—Decided September 24, 2013.*

2013 WI App 125

(Also reported in 839 N.W.2d 173.)

† Petition for Review denied January 13, 2014.

180

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Colleen Marion*, assistant state public defender, and *Davorin J. Odrcic*, of *Straub Immigration, LLC*, of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *J.B. Van Hollen*, attorney general, and *Christopher G. Wren*, assistant attorney general.

Before Curley, P.J., Fine and Kessler, JJ.

¶ 1. CURLEY, P.J. Ali Mursal appeals the judgment convicting him of second-degree sexual assault, contrary to Wis. Stat. § 940.225(2)(a) (2007–08),[1] and kid

---

[1] All references to the Wisconsin Statutes are to the 2011–12 version unless otherwise noted.

napping as party to a crime, contrary WIS. STAT. §§ 940.31(1)(c) & 939.05 (2007–08), and appeals the orders denying his postconviction motions. Mursal argues that he is entitled to withdraw his plea because the trial court, in providing him the immigration warning pursuant to WIS. STAT. § 971.08(1)(c), did not state the statutory language verbatim, but instead gave a warning that substantially complied with the statute and included very slight linguistic differences that in no way altered the meaning of the warning. In the alternative, Mursal argues that he is entitled to resentencing because the trial court erroneously exercised its discretion. We affirm.

## BACKGROUND

¶ 2. On March 9, 2008, the State filed a criminal complaint against Mursal, charging him with first-degree sexual assault[2] and kidnapping, as party to a crime. The complaint alleged that on March 3, 2008, twenty-three-year-old Mursal and a co-defendant went to the Washington Library on North Sherman Avenue in Milwaukee, where they intimidated and coerced seventeen-year-old J.B. to leave with them. Mursal and his co-defendant took J.B. to an apartment building basement where they assaulted her several ways: Mursal had non-consensual sexual contact with J.B. in the back seat of the car on the way to the apartment; Mursal continued to molest J.B. and, additionally, had sex with her against her will when they arrived; and Mursal's co-defendant had non-consensual sexual contact with J.B. following Mursal's assaults. J.B. tried to resist, but was afraid and believed that if she did not cooperate, Mursal and his co-actor would hurt her.

---

[2] The charges were later amended to second-degree sexual assault.

¶ 3. Following two competency evaluations—after which the trial court found Mursal competent to proceed—Mursal pled guilty to three counts of second-degree sexual assault and one count of kidnapping, as party to a crime.

¶ 4. At Mursal's plea hearing, the trial court advised Mursal, a Somali refugee, of the potential consequences of his plea:

> THE COURT: You . . . need to know if you're not a citizen of the United States, your plea can result in deportation, exclusion from admission to this country or denial of naturalization under federal law. Do you understand all that, sir?[3]

> [MURSAL, VIA INTERPRETER]: Yes.

¶ 5. Following Mursal's conviction, the trial court imposed a global sentence of sixty years, with forty years' initial confinement and twenty years' extended supervision:

> As to [C]ount 1[, the kidnapping count], the Court is going to order 30 years in the Wisconsin State Prison System, consecutive to any other sentence; twenty years initial confinement, ten years extended supervision with credit for 375 days.

> As to Count 2, [the first count of sexual assault], the Court is going to order 30 years in the Wisconsin State Prison System consecutive to any other sentence, zero credit; 20 years initial confinement, 10 years extended supervision.

> As to [the next count of sexual assault], the Court is going to order 20 years in the Wisconsin State Prison System, concurrent with counts 1 and 2; 10 years initial confinement, 10 years extended supervision.

---

[3] The Honorable Carl Ashley presided over Mursal's plea hearing, as well as sentencing.

And as to [the final count of sexual assault], again, 20 years in the Wisconsin State Prison System, concurrent with counts 1 and 2; 10 years initial confinement, 10 years extended supervision.

¶ 6. In sentencing Mursal, the trial court considered the seriousness of the offenses, Mursal's character, and the need to protect the community. Regarding the offense, the court summarized the facts and described the behavior as "outrageous" and "extremely egregious," finding the type of sexual conduct (sexual intercourse) to be aggravated. Regarding Mursal's character, the trial court found Mursal to be manipulative and frightening. It also found that Mursal was the main actor, and at age twenty-three, was older than his teenage victim, who "didn't know if she would ever come out" of the "dark basement" "alive." Additionally, the court acknowledged Mursal's mental health issues and his difficult youth. Regarding the need to protect the community, the court said that the sentence was intended to send a message to Mursal and to "everybody else in the community that you don't take a young, a naïve young lady, snatch her up and perpetrate these type[s] of acts on her person."

¶ 7. In addition, the trial court gave Mursal credit for entering a guilty plea. However, it did not disregard that the State had "a substantially strong case." The court also noted that, although Mursal apologized to the court, he did not express concern for J.B.

¶ 8. Following sentencing, Mursal filed several postconviction motions, all of which were denied. The first postconviction motion requested, among other things, resentencing on the ground that the court failed to explain the duration of the sentence, which Mursal also asserted was harsh and excessive. After an eviden-

tiary hearing, the trial court denied the motion.[4] Mursal filed a notice of appeal, but subsequently moved to voluntarily dismiss the appeal based on counsel's discovery of additional grounds for plea withdrawal (another issue alleged in the first postconviction motion), and this court reinstated his Wɪs. Sᴛᴀᴛ. Rᴜʟᴇ 809.30 deadlines. The second postconviction motion, filed on January 31, 2012, was for plea withdrawal on the ground that the court failed to advise him it was not bound by the State's charging concessions.[5] This motion was denied,[6] and again Mursal filed a notice of appeal, but subsequently moved to voluntarily dismiss the appeal based on counsel's discovery of an additional issue, and this court reinstated his § 809.30 deadlines. Mursal's third postconviction motion, filed November 19, 2012, was a motion to withdraw his guilty plea on the ground that the trial court failed to advise him of the immigration consequences of his pleas as required by Wɪs. Sᴛᴀᴛ. § 971.08(1)(c). The trial court denied this motion.[7]

¶ 9. Mursal now appeals.

### Aɴᴀʟʏsɪs

¶ 10. Mursal presents two issues on appeal. He argues that he is entitled to withdraw his plea because the trial court failed to properly advise him, pursuant to Wɪs. Sᴛᴀᴛ. § 971.08(1)(c), of the immigration consequences of his plea. In the alternative, he argues that he

---

[4] The Honorable Dennis R. Cimpl denied Mursal's first postconviction motion.

[5] Mursal does not raise this issue on appeal.

[6] The Honorable Dennis R. Cimpl denied Mursal's second postconviction motion.

[7] The Honorable Ellen R. Brostrom denied Mursal's third postconviction motion.

is entitled to resentencing because the trial court erroneously exercised its discretion. We discuss each issue in turn.

*I. Mursal is not entitled to withdraw his plea because the trial court properly warned him of the consequences of his plea pursuant to WIS. STAT. § 971.08.*

■■

¶ 11. Mursal first argues that the trial court failed to properly advise him of the immigration consequences of his plea pursuant to WIS. STAT. § 971.08(1)(c). Whether the trial court's warning complied with the statute is a question of law we review *de novo. See State v. Dwyer*, 181 Wis. 2d 826, 836, 512 N.W.2d 233 (Ct. App. 1994). Our inquiry " 'begins with the language of the statute.' " *See State ex rel. Kalal v. Circuit Court for Dane Cnty.*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110 (citation omitted). We give statutory language "its common, ordinary, and accepted meaning," and give "technical or specially-defined words or phrases" "their technical or special definitional meaning." *See id.* We must also keep in mind that "[c]ontext is important to meaning. So, too, is the structure of the statute in which the operative language appears." *See id.*, ¶ 46. Therefore, we interpret statutory language "in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *See id.*

¶ 12. We begin by referencing the statutory language. WISCONSIN STAT. § 971.08(1)(c) provides, as relevant:

> Before the court accepts a plea of guilty or no contest, it shall do all of the following:

188

. . . .

Address the defendant personally and advise the defendant as follows: "If you are not a citizen of the United States of America, you are advised that a plea of guilty or no contest for the offense with which you are charged may result in deportation, the exclusion from admission to this country or the denial of naturalization, under federal law."

¶ 13. As noted, the trial court advised Mursal as follows:

THE COURT: You . . . need to know if you're not a citizen of the United States, your plea can result in deportation, exclusion from admission to this country or denial of naturalization under federal law. Do you understand all that, sir?

¶ 14. Thus, the trial court's warning given at the plea hearing complied completely with the statute's substance, but its language deviated—very slightly— from the exact language expressed by the statute. We note the linguistic differences:

a) The trial court said "*you're* not a citizen" instead of "*you are* not a citizen";

b) The trial court said "United States" instead of "United States of America";

c) The trial court said "*can* result" instead of "*may* result," and

d) The trial court said "your plea" instead of "you are advised that a plea of guilty or no contest" and omitted "the offense with which you are charged" that would have followed "guilty or no contest."

¶ 15. According to Mursal, he is entitled to withdraw his plea because, even though the substance of the trial court's warning fully complied with WIS. STAT.

189

§ 971.08(1)(c), the exact language used deviated from the statute. He argues that there is only one way for trial courts to comply with the statute, and that is to repeat the statutory language *verbatim*.

■

¶ 16. We disagree. In the instant case, the trial court's WIS. STAT. § 971.08(1)(c) warning completely explained each of the elements listed in the statute. The trial court explained that if Mursal was not a citizen of the United States, his plea might result in deportation, the exclusion from admission to this country or the denial of naturalization under federal law. Substantively, the trial court's warning complied perfectly with the statute, and linguistically, the differences were so slight that they did not alter the meaning of the warning in any way.

¶ 17. We do acknowledge, of course, that the statutory language is strongly preferred. As this court has stated and as the supreme court has agreed, "WIS. STAT. § 971.08(1)(c) is a clear directive to the circuit courts and . . . it 'not only commands what the court must personally say to the defendant, but the language is bracketed by quotation marks, an unusual and significant legislative signal that the statute should be followed to the letter.' " *State v. Douangmala*, 2002 WI 62, ¶ 21, 253 Wis. 2d 173, 646 N.W.2d 1 (citing *State v. Garcia*, 2000 WI App 81, ¶ 16, 234 Wis. 2d 304, 610 N.W.2d 180 (overruled regarding application of harmless error test to WIS. STAT. § 971.08 analysis by *Douangmala*, 253 Wis. 2d 173, ¶ 42)); *see also State v. Vang*, 2010 WI App 118, ¶ 15, 328 Wis. 2d 251, 789 N.W.2d 115 ("we reiterate our caution to circuit courts to recite with precision the statutory admonition").

¶ 18. Contrary to what Mursal argues, however, the cases he cites to support his position do *not* require

trial judges to repeat the statutory language *verbatim*. For example, in *Douangmala*, the issue before the court was not whether the trial court's warning substantially complied with the statute, but rather, whether a defendant was entitled to withdraw his plea when the trial court failed to give the Wis. Stat. § 971.08(1)(c) deportation warning. *See Douangmala*, 253 Wis. 2d 173, ¶ 3. The trial court in that case "failed to discuss with the defendant the issue of deportation *at all* prior to or during the plea hearing." *See id.*, ¶ 20 (emphasis added). Similarly, in *Vang*, another of Mursal's cited cases, the issue before the court was whether the defendant was entitled to withdraw his plea when the trial court failed to give the deportation warning at the plea hearing, giving it at the arraignment instead. *See id.*, 328 Wis. 2d 251, ¶¶ 1–2. Indeed, we note that although the trial court's warning in *Vang* did not fully comply with the statutory language—the trial court "nearly, but not quite, stated the deportation warning as prescribed by the statute," *see id.*, ¶ 15—it appears that the parties did not bring this issue to the court's attention on appeal in that case.

¶ 19. As the trial court concluded when it denied Mursal's third postconviction motion, implementing the rule Mursal proposes would lead to plea reversals in cases where, as here, the warning wholly complied with the substance of the statute. "If a *verbatim* reading of the statute were required, then *even mistaking one word* in the statute, no matter how inconsequential . . . would create a defect which would require the court to withdraw the plea." (Emphasis added.) We decline to fashion such a rule.

¶ 20. In the case before us, the statute's purpose—to notify a non-citizen defendant of the immigration consequences of a criminal conviction—was

191

undoubtedly effectuated, and the linguistic differences were so slight that they did not alter the meaning of the warning in any way; therefore, we conclude that the trial court did in fact properly warn Mursal of the consequences of his plea pursuant to WIS. STAT. § 971.08(1)(c). Because the trial court substantially complied with the mandate of § 971.08, Mursal is not entitled to withdraw his plea.

*II. Mursal is not entitled to resentencing because the trial court properly exercised its discretion.*

¶ 21. Mursal next argues that he is entitled to resentencing because the trial court erroneously exercised its discretion. Specifically, Mursal argues that the trial court "failed to explain the linkage between its sentencing objectives and the terms of the sentence it imposed," claiming that the trial court "did not explain where it came up with the numbers it selected." He also takes issue with the harshness of the sentence, arguing that it is excessive under the circumstances.

¶ 22. Sentencing is committed to the trial court's discretion. *State v. Gallion*, 2004 WI 42, ¶ 17, 270 Wis. 2d 535, 678 N.W.2d 197. A defendant challenging a sentence "has the burden to show an unreasonable or unjustifiable basis in the record for the sentence at issue." *State v. Lechner*, 217 Wis. 2d 392, 418, 576 N.W.2d 912 (1998). We start with a presumption that the trial court acted reasonably, and we do not interfere with the sentence if discretion was properly exercised. *See id.* at 418–19.

¶ 23. In its exercise of discretion, the trial court must consider a variety of factors, including "the gravity of the offense, the character of the defendant, and the need to protect the public." *See State v. Harris*, 2010 WI 79, ¶ 28, 326 Wis. 2d 685, 786 N.W.2d 409. The weight assigned to the various factors is left to the trial court's discretion. *Id.* Furthermore, because "the exercise of discretion does not lend itself to mathematical precision," *see Gallion*, 270 Wis. 2d 535, ¶ 49, the trial court need not "provide an explanation for the precise number of years chosen," *see State v. Taylor*, 2006 WI 22, ¶ 30, 289 Wis. 2d 34, 710 N.W.2d 466.

¶ 24. We also review an allegedly harsh and excessive sentence for an erroneous exercise of discretion. *See State v. Giebel*, 198 Wis. 2d 207, 220, 541 N.W.2d 815 (Ct. App. 1995). A sentence is unduly harsh when it is "so excessive and unusual and so disproportionate to the offense committed so as to shock public sentiment and violate the judgment of reasonable people concerning what is right and proper under the circumstances." *Ocanas v. State*, 70 Wis. 2d 179, 185, 233 N.W.2d 457 (1975). "A sentence well within the limits of the maximum sentence[,]" however, "is not so disproportionate to the offense committed as to shock the public sentiment and violate the judgment of reasonable people concerning what is right and proper under the circumstances." *State v. Daniels*, 117 Wis. 2d 9, 22, 343 N.W.2d 411 (Ct. App. 1983).

¶ 25. Revisiting the sentencing transcript, we conclude that the record belies Mursal's claim that the trial court's remarks at sentencing did not substantiate the sentence. As noted, the trial court considered the seriousness of the offenses, Mursal's character, and the

need to protect the community. *See Harris*, 326 Wis. 2d 685, ¶ 28. Regarding the offense, the court summarized the facts and described the behavior as "outrageous" and "extremely egregious," finding the type of sexual conduct to be aggravated. The trial court also considered the fact that Mursal was "the main actor" in committing the crimes. Regarding Mursal's character, the trial court found Mursal to be manipulative and frightening, and someone who would feign ignorance, but whose actions showed otherwise. The trial court also considered that Mursal was older than his teenage victim, and acknowledged Mursal's mental health issues and his difficult youth. Regarding the need to protect the community, the court said that the sentence was intended to send a message to Mursal and to "everybody else in the community that you don't take a young, a naïve young lady, snatch her up and perpetrate these type[s] of acts on her person." Furthermore, the trial court also noted that, although Mursal apologized to the court, he did not express concern for J.B. While the trial court may not have assigned a numerical value to each of the factors it considered, it was not required to do so. *See Taylor*, 289 Wis. 2d 34, ¶ 30.

¶ 26. Moreover, the sentence was not excessive. Mursal pled guilty to four Class C felonies: three counts of second-degree sexual assault and one count of kidnapping as party to a crime. *See* WIS. STAT. §§ 940.225(2)(a), 940.31(1)(c), and 939.05 (2007–08). He faced forty years' imprisonment on each count, bifurcated as twenty-five years of confinement in prison and fifteen years of extended supervision. *See* WIS. STAT. §§ 939.50(3)(c) & 973.01(2)(b)3. (2007–08). Mursal's sentence—a combination of consecutive and concurrent

sentences totaling sixty years—was well within the maximums allowed by law, and was not excessive. *See Ocanas*, 70 Wis. 2d at 185.

¶ 27. Therefore, because the trial court properly exercised its discretion in sentencing Mursal, we conclude that Mursal is not entitled to resentencing.

*By the Court.*—Judgment and orders affirmed.