In the

# United States Court of Appeals

### For the Seventh Circuit

No. 13-2470

PEDRO CANO-OYARZABAL,

*Petitioner,*

*v.*

ERIC H. HOLDER, JR., Attorney General
of the United States,

*Respondent.*

Petition for Review of an Order of the Board of Immigration Appeals.
No. A205-153-710.

ARGUED JANUARY 6, 2014 — DECIDED DECEMBER 22, 2014

Before EASTERBROOK, WILLIAMS, and TINDER, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Pedro Cano-Oyarzabal petitions for review of the determination that his Wisconsin conviction for fleeing or eluding a police officer in violation of Wisconsin Statute § 346.04(3) categorically constituted a crime involving moral turpitude. In light of the statute's requirement that to be convicted a person must "knowingly" flee or

attempt to elude an officer after receiving an officer's signal, we find the Board's determination reasonable. Knowingly fleeing or attempting to elude an officer is an act wrong in itself and therefore a crime involving moral turpitude. We decline the petition for review.

## I. BACKGROUND

Cano-Oyarzabal, a citizen of Mexico, entered the United States without authorization in September 2002. He pled guilty in Wisconsin state court on August 2, 2011 to operating a vehicle to flee or elude a police officer in violation of Wisconsin Statute § 346.04(3). About a year later, the Department of Homeland Security served him with a Notice to Appear in immigration court. It charged him with inadmissibility as a person present in the United States without being admitted or paroled and as an alien convicted of a crime involving moral turpitude.

Cano-Oyarzabal conceded removability. He later sought reconsideration of the immigration judge's determination that he is removable as an alien convicted of a crime involving moral turpitude, and he requested cancellation of removal pursuant to 8 U.S.C. § 1229b(b). The immigration judge concluded that the Wisconsin conviction was for a crime involving moral turpitude and so Cano-Oyarzabal was not eligible for cancellation of removal. The Board of Immigration Appeals affirmed. Cano-Oyarzabal petitions our court for review.

## II. ANALYSIS

Cano-Oyarzabal petitions us for review of the Board's determination that he was convicted of a crime involving moral turpitude. Because the Board issued its own free-

standing opinion, rather than adopting or supplementing the opinion of the immigration judge, our review will be of the Board's opinion. *Sanchez v. Holder*, 757 F.3d 712, 717 (7th Cir. 2014).

The Immigration and Nationality Act provides that an alien convicted of a "crime involving moral turpitude" is inadmissible. 8 U.S.C. § 1182(a)(2)(A)(i)(I). A conviction for such a crime also makes one ineligible for cancellation of removal, subject to exceptions not relevant here. 8 U.S.C. § 1229b(b)(1)(C). We usually do not have jurisdiction to review the denial of a discretionary grant of relief such as the cancellation of removal Cano-Oyarzabal seeks. *See* 8 U.S.C. § 1252(a)(2)(B)(i). We have jurisdiction, however, to review questions of law or constitutional claims raised in a petition for review, 8 U.S.C. § 1252(a)(2)(D), and whether the Board properly classified a conviction as a crime involving moral turpitude is a question of law that we may review. *Marin-Rodriguez v. Holder*, 710 F.3d 734, 737 (7th Cir. 2013).

We might have had another jurisdictional issue, because 8 U.S.C. § 1252(a)(2)(C) usually precludes our review of orders of removal against aliens who are removable for having committed an aggravated felony under 8 U.S.C. § 1227(a)(2)(A)(iii). *Papazoglou v. Holder*, 725 F.3d 790, 792 (7th Cir. 2013). But DHS did not charge Cano-Oyarzabal with removability as an aggravated felon, so whether a conviction under Wisconsin Statute § 346.04(3) constitutes an aggravated felony is not relevant to our jurisdictional analysis. *See Lemus-Rodriguez v. Ashcroft*, 350 F.3d 652, 654-55 (7th Cir. 2003) (stating that the jurisdictional bar in 8 U.S.C. § 1252(a)(2)(C) only applies if the alien is removable on account of a qualifying ground charged by DHS).

The INA does not define what it means to be a "crime in-
volving moral turpitude." We have described the Board's
precedents as distinguishing "between acts that are seen as
ethically wrong without any need for legal prohibition (acts
wrong in themselves, or *malum in se*), and those that are ethi-
cally neutral and forbidden only by positive enactment (acts
wrong because they are so decreed, or *malum prohibitum*)."
*Ali v. Mukasey*, 521 F.3d 737, 740 (7th Cir. 2008). The former
are crimes of moral turpitude, while the latter are not. *Id.*
Although whether a crime is one involving moral turpitude
is a question of law, we have said "that does not mean our
review … is de novo." *Lagunas-Salgado v. Holder*, 584 F.3d
707, 711 (7th Cir. 2009). Rather, we have ruled that our re-
view of the Board's determination of whether a particular
crime should be classified as a crime of moral turpitude is
deferential in accordance with *Chevron, U.S.A., Inc. v. Natural
Resources Defense Council, Inc.*, 467 U.S. 837 (1984), provided
that the agency uses rulemaking or adjudication to exercise
its discretion. *Ali*, 521 F.3d at 739; *see also Mata-Guerrero v.
Holder*, 627 F.3d 256, 259 (7th Cir. 2010). Decisions by a three-
member panel are precedential and clearly entitled to *Chev-
ron* deference under *Ali*. *Arobelidze v. Holder*, 653 F.3d 513,
519 (7th Cir. 2011). Non-precedential decisions that rely on
applicable Board precedent are entitled to *Chevron* deference
as well, "as the non-precedential disposition is merely ap-
plying reasoning that already carries precedential weight."
*Id.* A non-binding Board decision that does not rely on bind-
ing Board precedent, on the other hand, does not receive
*Chevron* deference and instead is "'entitled to respect'—but
only to the extent that [it has the] power to persuade," in ac-
cordance with *Skidmore v. Swift & Co.*, 323 U.S. 134, 140
(1944). *Arobelidze*, 653 F.3d at 519 (quoting *Bailey v. Pregis In-*

*novative Packaging, Inc.*, 600 F.3d 748, 751 (7th Cir. 2010) (additional citation omitted)).

Cano-Oyarzabal argues that *Skidmore* rather than *Chevron* deference is appropriate here because, he contends, the Board's non-binding decision was not based on Board precedent. He acknowledges that the agency's decision relied on the precedential Board decision in *Matter of Ruiz-Lopez*, 25 I. & N. Dec. 551 (BIA 2011). But because *Ruiz-Lopez* looked in part to our decision in *Mei v. Ashcroft*, 393 F.3d 737 (7th Cir. 2004), Cano-Oyarzabal argues that the Board was really relying on Seventh Circuit precedent rather than its own precedent, and therefore the agency decision in this case should not be given full *Chevron* deference. We disagree. In both its *Ruiz-Lopez* decision and its decision here, it is clear that the Board engaged in substantive analysis and was not simply affirming without providing reasoning of its own. *See Mata-Guerrero*, 627 F.3d at 259. *Ruiz-Lopez* involved a Washington state statute, different than the Illinois statute at issue in *Mei*, and the decision contains the Board's substantive analysis and reasoning as to why the Washington statute was a crime involving moral turpitude. *See* 25 I. & N. Dec. at 551. Its decision here also reflects its own independent analysis for determining that Cano-Oyarzabal was convicted of a crime involving moral turpitude. *Chevron* deference is therefore appropriate. *See Ghani v. Holder*, 557 F.3d 836, 840 (7th Cir. 2009) (giving *Chevron* deference and deferring to "plausible 'agency answer'" as to the proper interpretation of "crime involving moral turpitude"); *see also City of Arlington v. F.C.C.*, 133 S. Ct. 1863, 1868 (2013) (deferring to administering agency's "reasonable" interpretation of statutory ambiguity).

*Matter of Silva-Trevino*, 24 I. & N. Dec. 687, 688 (Atty. Gen. 2008), established a "uniform framework for ensuring that the Act's moral turpitude provisions are fairly and accurately applied," and we have said that *Silva-Trevino*'s framework for determining whether a conviction is for a crime involving moral turpitude is entitled to *Chevron* deference. *Marin-Rodriguez*, 710 F.3d at 738. The first step in the *Silva-Trevino* framework is to look at the statute on a categorical basis and "determine whether there is a 'realistic probability, not a theoretical possibility,' that the State or Federal criminal statute pursuant to which the alien was convicted would be applied to reach conduct that does not involve moral turpitude." *Silva-Trevino*, 24 I. & N. Dec. at 689-90 (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007)). "If it appears that the government in question would apply its criminal statute to reach both turpitudinous and non-turpitudinous acts—perhaps because the statute is divisible, but also because the statute could realistically cover a wide range of conduct—the adjudicator is instructed to proceed to step two." *Sanchez*, 757 F.3d at 717. At step two, the adjudicator should proceed with a "modified categorical" inquiry by first examining the record of conviction. *Silva-Trevino*, 24 I. & N. Dec. at 690. If the record of conviction does not resolve the matter, then evidence beyond the formal record of conviction may be considered "if necessary and appropriate" to discern the nature of the underlying conviction. *Id.*

Here, the Board concluded that a conviction for violating Wisconsin Statute § 346.04(3) categorically qualified as a crime of moral turpitude, and as a result that the inquiry ended at the first step of the *Silva-Trevino* analysis. The Wisconsin statute at issue provides:

> No operator of a vehicle, after having received a visual or audible signal from a traffic officer, or marked police vehicle, shall knowingly flee or attempt to elude any traffic officer by willful or wanton disregard of such signal so as to interfere with or endanger the operation of the police vehicle, or the traffic officer or other vehicles or pedestrians, nor shall the operator increase the speed of the operator's vehicle or extinguish the lights of the vehicle in an attempt to elude or flee.

Wis. Stat. § 346.04(3).

So there are three ways a person may violate this provision: (1) willful disregard of the signal so as to interfere with or endanger the officer, vehicles, or pedestrians, (2) increasing the speed of the vehicle, or (3) turning off the lights of the vehicle, but only, and importantly, if it is also proven in each circumstance that the defendant "knowingly fled or attempted to elude a traffic officer." *State v. Beamon*, 830 N.W.2d 681, 691-92 (Wis. 2013). The statute is not a strict liability offense; knowledge is required. *State v. Sterzinger*, 649 N.W.2d 677, 680 (Wis. Ct. App. 2002).

The Board reasoned that Wisconsin Statute § 346.04(3) categorically constituted a crime of moral turpitude for several reasons. For one, it looked to its own binding precedent in *Ruiz-Lopez*, 25 I. & N. Dec. 551, where it ruled that the Washington state offense of willfully failing to bring a vehicle to a stop and driving in a manner indicating a wanton or willful disregard for the lives or property of others while attempting to elude a police vehicle is a crime involving moral turpitude. *See* Wash. Rev. Code § 46.61.024 (1997). The Board reached that conclusion without considering the circum-

stances of the particular case, instead finding that the offense categorically constituted a crime involving moral turpitude. *Id.*

The Board also supported its conclusion regarding Wisconsin Statute § 346.04(3) by looking to our decision in *Mei*, 393 F.3d 737. There we held that a conviction for aggravated fleeing or attempting to elude a peace officer under Illinois law qualified as a conviction for a crime involving moral turpitude. *Id.* at 742. Mei had been charged with fleeing or attempting to elude a police officer after being given a signal to stop, with the aggravating factor that the attempt to elude was at a rate at least twenty-one miles per hour over the speed limit. *See* 625 Ill. Comp. Stat. 5/11-204, 625 Ill. Comp. Stat. 5/11-204.1(a).

Cano-Oyarzabal contends that *Mei* is materially distinguishable. He argues that the Illinois statute requires a specific mens rea with regard to endangering the lives of others and that the conduct punished by the Illinois statute necessarily results in creating the possibility of danger to others while the Wisconsin statute does not. In finding that Mei's conviction was for a crime involving moral turpitude, we emphasized that the statute "explicitly requires a willful failure or refusal to obey a police officer's order to stop." 393 F.3d at 741. As a result, although we recognized it was possible for a driver to be speeding without knowing that he has been signaled by an officer to stop, we said that such conduct would not fall within the Illinois statute at issue. *Id.* We concluded that "a person who deliberately flees at a high speed from an officer who, the fleer knows, wants him to stop, thus deliberately flouting lawful authority and endan-

gering the officer, other drivers, passengers, and pedestrians, is deliberately engaged in seriously wrongful behavior." *Id.*

Although the Wisconsin statute does not require a specific miles-per-hour above the speed limit as in *Mei*, we do not find the difference dispositive here. That Wisconsin Statute § 346.04(3) can only be violated by knowing flight or attempt to elude is significant. *See Beamon*, 830 N.W.2d at 691-92; *see also Welch v. United States*, 604 F.3d 408, 418 (7th Cir. 2010) (stating that while a failure to stop could be an unintentional act, the requirement of "fleeing" in Illinois statute implies willfulness). As we explained in *Mei*, when a person intentionally flees from an officer, knowing that the officer wants him to stop, "he has to know that he is greatly increasing the risk of an accident (and for the further reason that a fleeing driver is dividing his attention between the road and his pursuer)." *Mei*, 393 F.3d at 742. Increasing one's speed in an attempt to elude or flee increases the risk of an accident, as does turning off the lights when done in an attempt to elude or flee or willfully disregarding an officer's signal so as to interfere with or endanger other persons. *See Sykes v. United States*, 131 S. Ct. 2267, 2273 (2011) ("When a perpetrator defies a law enforcement command by fleeing in a car, the determination to elude capture makes a lack of concern for the safety of property and persons of pedestrians and other drivers an inherent part of the offense."). As a result the Board could reasonably find that violating the Wisconsin statute involves committing an act that is wrong in itself, or *malum in se. See Ali*, 521 F.3d at 740.

In accordance with *Silva-Trevino*, the Board considered whether Wisconsin Statute § 346.04(3) would be applied to reach conduct that did qualify as a crime involving moral

turpitude. In light of the statutory elements as interpreted by the Wisconsin Supreme Court, it found no evidence of such a risk. *See Beamon*, 830 N.W.2d at 691-92. It also noted that Cano-Oyarzabal had not pointed to any Wisconsin decisions that might give us concern, and we have not found any either. *Cf. State v. Oppermann*, 456 N.W.2d 625, 626-27 (Wis. Ct. App. 1990) (reversing Wisconsin Statute § 346.04(3) conviction upon finding red lights and a siren on a car were alone insufficient for driver to know he was eluding an officer and stating "keystone of the fleeing charge is 'knowingly' fleeing an officer").

The Board's determination that Wisconsin Statute § 346.04(3) categorically qualifies as a crime involving moral turpitude is a reasonable one. It is also consistent with decisions our sister circuits have reached when evaluating similar statutes. *See Idowu v. Attorney Gen.*, 512 Fed. Appx. 222, 225 (3rd Cir. 2013) (unpublished) (agreeing with immigration judge that New Jersey conviction for knowingly evading police and in the process creating a risk of death or injury to a third person is a crime of moral turpitude); *Ruiz-Lopez v. Holder*, 682 F.3d 513, 521 (6th Cir. 2012) ("fleeing from a police vehicle qualifies as the type of societally condemned, reprehensible conduct that is reasonably encompassed by the BIA's general definition of a [crime involving moral turpitude]"); *Pulido-Alatorre v. Holder*, 381 Fed. Appx. 355, 359 (5th Cir. 2010) (unpublished) (upholding the Board's determination that misdemeanor conviction for evading arrest with a vehicle in violation of Texas Penal Code § 38.04(a) is crime involving moral turpitude where petitioner pled guilty to intentionally fleeing from an officer lawfully attempting to detain him and Board found "such conduct re-

flects an awareness and conscious disregard of a substantial and unjustifiable risk").

Our conclusion that it was permissible for the Board to determine that Cano-Oyarzabal's conviction was categorically for a crime involving moral turpitude makes it unnecessary for us to consider his argument that recent Supreme Court decisions in *Moncrieffe v. Holder*, 133 S. Ct. 1678 (2013), and *Descamps v. United States*, 133 S. Ct. 2276 (2013), displace the *Silva-Trevino* framework with respect to its use of the modified categorical approach and the record of conviction. That is, since we decline to set aside the Board's decision on the categorical basis, we do not reach its alternate conclusion that consideration of Cano-Oyarzabal's particular circumstances also demonstrates that his conviction was for a crime involving moral turpitude.

### III. CONCLUSION

The petition for review is DENIED.