STATE of Wisconsin, Plaintiff-Respondent,†

v.

Jose Alberto Reyes FUERTE, Defendant-Appellant.

Court of Appeals

*No. 2015AP2041–CR. Submitted on briefs August 12, 2016.
—Decided September 8, 2016.*

2016 WI App 78

(Also reported in 887 N.W.2d 121.)

† Petition for Review filed.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Ben M. Crouse* of *Sesini Law Group, S.C.*, Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Nancy A. Noet*, assistant attorney general, and *Brad D. Schimel*, attorney general.

Before Lundsten, Sherman and Blanchard, JJ.

¶ 1. LUNDSTEN, J.   Jose Alberto Reyes Fuerte pled guilty to attempting to flee or elude an officer and

to operating a motor vehicle with a controlled substance in his blood. Reyes Fuerte contends that he is entitled to plea withdrawal because (1) when taking his pleas and advising him of the potential immigration consequences of his pleas, the circuit court failed to comply with both Wis. Stat. § 971.08 and our supreme court's interpretation of that statute in *State v. Douangmala*, 2002 WI 62, 253 Wis. 2d 173, 646 N.W.2d 1, and (2) pursuant to the same authority, he has made a sufficient showing that one of his pleas was likely to result in his deportation.[1] We agree that the circuit court failed to comply with the advisement requirement in § 971.08(1)(c). We also conclude that Reyes Fuerte's plea withdrawal motion sufficiently alleges facts that, if true, demonstrate that his plea to the fleeing an officer charge was likely to result in his deportation. However, for reasons explained below, we decline to vacate Reyes Fuerte's pleas. Instead, we reverse and remand for an evidentiary hearing at which Reyes Fuerte will have the opportunity to prove that the plea to fleeing an officer was likely to result in his deportation.[2]

## Background

¶ 2.   In February 2014, Reyes Fuerte pled guilty to two crimes:   fleeing an officer, a felony; and operating a motor vehicle with a controlled substance in his blood, second offense, a misdemeanor. Wisconsin Stat.

---

[1] All references to the Wisconsin Statutes are to the 2013–14 version unless otherwise noted.

[2] As indicated in the text, Reyes Fuerte's allegations as to the likelihood of deportation focus on one of his two pleas, the plea to fleeing an officer. The parties do not address, and we need not address, whether plea withdrawal on the fleeing an officer charge would also require plea withdrawal on the other charge. If any dispute in this regard arises, the parties can address it as needed following remand.

§ 971.08(1)(c) provides specific language that courts are required to use when advising defendants of the deportation and other immigration consequences of a guilty or no contest plea. As described in our analysis below, the circuit court deviated in significant ways from that statutorily specified language.

¶ 3. After conviction and sentencing, Reyes Fuerte moved to withdraw his pleas, relying on WIS. STAT. § 971.08 and *Douangmala*. Reyes Fuerte alleged that the circuit court failed in several respects to provide the advice required by § 971.08(1)(c), including by referring to whether a defendant is a non-"resident" instead of a non-"citizen" and by omitting reference to the immigration consequence of the denial of naturalization. Reyes Fuerte also made allegations relating to the likelihood that his plea to fleeing an officer would result in his deportation.

¶ 4. The circuit court held a non-evidentiary hearing at which the prosecutor opposed Reyes Fuerte's motion on two grounds. First, the prosecutor argued that substantial compliance with the advisement requirement in WIS. STAT. § 971.08(1)(c) is sufficient and that the court's advice substantially complied with the statute. Second, the prosecutor argued, based primarily on Reyes Fuerte's plea questionnaire and waiver form, that Reyes Fuerte was actually aware of deportation consequences at the time he entered his pleas.

¶ 5. The circuit court denied Reyes Fuerte's motion, agreeing with both of the prosecutor's arguments. The circuit court did not provide an opportunity for Reyes Fuerte to present evidence regarding the likelihood that his pleas would result in deportation and did not otherwise address his allegations in that regard.

¶ 6. We reference additional facts in the Discussion section below.

110

*Discussion*

¶ 7. Reyes Fuerte argues that he is entitled to plea withdrawal under Wis. Stat. § 971.08 and *Douangmala*. Before addressing the two parts of his argument, we pause to note the parties' apparent agreement on appeal that the circuit court erred when it relied on a harmless error analysis.

¶ 8. Our supreme court explained in *Douangmala* that harmless error principles do not apply to Wis. Stat. § 971.08(2). *See Douangmala*, 253 Wis. 2d 173, ¶ 42. It follows that the failure to provide a proper advisement under the statute cannot be deemed harmless based on a showing that the defendant was actually aware of the immigration consequences information that is contained in the required advisement. *See id.*, ¶¶ 3–4 & n.3, 25, 42, 46. The State does not argue that this court can affirm the circuit court based on this sort of harmless error analysis.[3] Accordingly, we return to Reyes Fuerte's two-part argument.

¶ 9. Reyes Fuerte's argument is based on the statutorily required immigration consequences advisement and the statutorily specified consequence of a court failing to provide that advisement.

---

[3] The State, in effect, argues that our supreme court could affirm the circuit court based on harmless error. That is, although the State acknowledges that we have no power to overrule or modify *State v. Douangmala*, 2002 WI 62, 253 Wis. 2d 173, 646 N.W.2d 1, the State nonetheless devotes most of its responsive brief to advancing theories for why *Douangmala*'s rejection of harmless error in this situation should be overruled. Because we lack the authority to overrule *Douangmala*, we do not discuss the substance of the State's challenge to that decision. Whether there is any merit to the State's challenge is for the supreme court to decide.

¶ 10.   First, Wis. Stat. § 971.08(1)(c) specifies the advisement:

> **(1)** Before the court accepts a plea of guilty or no contest, it shall do all of the following:
>
> . . . .
>
> (c) Address the defendant personally and advise the defendant as follows:  "If you are not a citizen of the United States of America, you are advised that a plea of guilty or no contest for the offense with which you are charged may result in deportation, the exclusion from admission to this country or the denial of naturalization, under federal law."

Wis. Stat. § 971.08(1)(c). Next, § 971.08(2) addresses what happens when a circuit court fails to provide the required advice. That subsection states, in pertinent part:

> **(2)** If a court fails to advise a defendant as required by sub. (1)(c) and a defendant later shows that the plea is likely to result in the defendant's deportation, exclusion from admission to this country or denial of naturalization, the court on the defendant's motion shall vacate any applicable judgment against the defendant and permit the defendant to withdraw the plea and enter another plea.

Wis. Stat. § 971.08(2).

¶ 11.   Viewed together, and as pertinent here, these subsections direct that, upon a motion made by a defendant, the court "shall" permit plea withdrawal if (1) at the plea hearing, the circuit court fails to provide the required immigration consequences advisement, and (2) a defendant later shows that a plea is likely to

112

result in one of the adverse immigration consequences listed in the required advisement. *See Douangmala*, 253 Wis. 2d 173, ¶¶ 3–4, 46.

¶ 12.   Here, the parties disagree with respect to both conditions for plea withdrawal.

### A. Whether The Advisement Given Complied With The Statute

¶ 13.   Reyes Fuerte argues that, at his plea hearing, the circuit court failed to provide him with the immigration advice that is required by Wɪs. Sᴛᴀᴛ. § 971.08(1)(c). Whether the circuit court's advice complied with the statute is a question of law that we review de novo. *State v. Mursal*, 2013 WI App 125, ¶ 11, 351 Wis. 2d 180, 839 N.W.2d 173. We agree with Reyes Fuerte that the circuit court did not comply with the statute.

¶ 14.   To repeat, under Wɪs. Sᴛᴀᴛ. § 971.08(1)(c), the circuit court was required to advise Reyes Fuerte as follows:

> "If you are not a citizen of the United States of America, you are advised that a plea of guilty or no contest for the offense with which you are charged may result in deportation, the exclusion from admission to this country or the denial of naturalization, under federal law."

What the court actually told Reyes Fuerte was this:

> Usually we're looking at felonies, but any conviction to a person who is not a resident of the United States could lead, at some point in the future, to that person either being denied re-entry or that person being required to leave this country.

¶ 15. Obviously, the circuit court did not use the exact words of the statute, something that is "strongly preferred" but not required. *See Mursal*, 351 Wis. 2d 180, ¶¶ 16–19. Our decision in *Mursal* makes clear that courts may deviate in non-substantive ways from the statute's wording. We characterized advisements with slight, non-substantive deviations as substantial compliance. *See id.*, ¶¶ 14–16, 20. There, we explained that slight deviations are tolerated so long as the court's advice accurately and completely conveys the substance of the statute. *See id.*, ¶¶ 14, 16, 20. The facts in *Mursal* shed light on this general statement.

¶ 16. In *Mursal*, the circuit court told the defendant the following:

> "You . . . need to know if you're not a citizen of the United States, your plea can result in deportation, exclusion from admission to this country or denial of naturalization under federal law."

*Id.*, ¶ 13. We explained that this advice contained several "slight[]" deviations from the statutory language:

a) The trial court said "*you're* not a citizen" instead of "*you are* not a citizen";

b) The trial court said "United States" instead of "United States of America";

c) The trial court said "*can* result" instead of "*may* result," and

d) The trial court said "your plea" instead of "you are advised that a plea of guilty or no contest" and omitted "the offense with which you are charged" that would have followed "guilty or no contest."

114

*Id.*, ¶ 14. We reasoned, however, that, "[s]ubstantively, the trial court's warning complied perfectly with the statute" and "did not alter the meaning . . . in any way." *Id.*, ¶ 16; *see also id.*, ¶ 20.

¶ 17.    While the specifics of *Mursal* might be helpful in close cases, this is not such a case. We agree with Reyes Fuerte that the advisement here deviated in at least two significant ways.

¶ 18.    First, the circuit court failed to use the statutory term "citizen" and, instead, advised Reyes Fuerte that his plea could result in immigration consequences if Reyes Fuerte was not a "resident." For immigration and deportation purposes, the two terms have very different legal implications.

¶ 19.    United States citizens, obviously, do not face possible deportation or other adverse immigration consequences based on violations of state criminal statutes. The State does not argue otherwise.

¶ 20.    A United States non-citizen "resident," in contrast, may face such consequences. The parties do not discuss possible definitions of the term "resident," but it is clear that, for purposes of immigration law, there are both citizen and non-citizen "residents" of the United States. *See, e.g., Garcia-Meza v. Mukasey*, 516 F.3d 535, 536 (7th Cir. 2008) (referring to a non-United States citizen as having the status of a "lawful permanent resident" of the United States). Significant here, even non-citizen residents who are legally present in the United States are subject to the immigration consequences that Wis. Stat. § 971.08(1)(c) and (2) are concerned with. *See, e.g., Carachuri-Rosendo v. Holder*, 560 U.S. 563, 566–67 (2010) (applying federal deportation provisions to lawful permanent resident); *Garcia-Meza*, 516 F.3d at 535–36 (same). Thus, the circuit court's advisement plainly and incorrectly informed Reyes

115

Fuerte that residents, which would cover non-citizen residents, need not worry about adverse immigration consequences.

¶ 21. We are unsure whether the State disagrees with this analysis. The State provides no argument as to whether the circuit court's use of "resident," rather than "citizen," is a substantial difference. In the absence of argument to the contrary, and for the reasons explained, we agree with Reyes Fuerte that the circuit court failed to give him the advice required by WIS. STAT. § 971.08(1)(c) when the court said "not a resident" instead of "not a citizen."

¶ 22. A second way the circuit court failed to give the required advice was by wholly omitting one of the three immigration consequences listed in the statute, "denial of naturalization." By contrast, in *Mursal* we found it significant that the advice "completely explained each of the elements listed in the statute." *See Mursal*, 351 Wis. 2d 180, ¶ 16.

¶ 23. The State concedes that the omission of the naturalization consequence was "substantive," but nonetheless argues that this omission does not matter because denial of naturalization was not an issue for Reyes Fuerte. This is true, according to the State, because in his motion Reyes Fuerte alleged only the deportation consequence and made no reference to the denial of naturalization. As far as we can tell, this does-not-matter-here argument is the sort of harmless error argument barred by the statute and the supreme court's interpretation of the statute in *Douangmala. See* ¶ 8, *supra*. We need not, however, definitively opine on this topic because the first deviation we have identified —the circuit court's use of "not a resident" instead of "not a citizen"—by itself compels the conclusion that the

court failed to provide Reyes Fuerte with the advice required by WIS. STAT. § 971.08(1)(c).

¶ 24.   Thus, Reyes Fuerte satisfied the first of the two conditions for plea withdrawal under WIS. STAT. § 971.08(2) and *Douangmala*. We turn to the second condition.

### B.   Whether Reyes Fuerte's Pleas Were Likely To Result In His Deportation

¶ 25.   As noted, the second condition for plea withdrawal under WIS. STAT. § 971.08(2) is that the defendant must show that a plea is "likely to result" in deportation or one of the other immigration consequences listed in the statute. *See* § 971.08(2). The parties dispute whether Reyes Fuerte made this showing. We conclude that Reyes Fuerte's motion alleges sufficient facts to entitle him to an evidentiary hearing at which he will have an opportunity to make the required showing.

¶ 26.   We begin by addressing how, for purposes of WIS. STAT. § 971.08(2), a defendant goes about proving that a plea is likely to result in deportation. In *State v. Valadez*, Nos. 2014AP678, 2014AP679, 2014AP680, unpublished certification (WI App Jan. 21, 2015), a recent case which we certified to the supreme court, we pointed out that "[t]he degree of certainty necessary to show . . . that a defendant is likely to suffer immigration consequences as a result of a guilty plea is not clear under existing case law." *Id.*, at 12. We asked the supreme court to address the following question: "How definite or imminent must deportation be in order for it to be 'likely' . . .?" *Id.*, at 1. The supreme court accepted certification but, as it turned out, provided guidance only

on the topic of the immigration consequence of exclusion from admission to this country. *See State v. Valadez*, 2016 WI 4, ¶¶ 7–9, 21, 30, 36, 42–52, 366 Wis. 2d 332, 874 N.W.2d 514. The *Valadez* court expressly stated that it was not addressing deportation. *See id.*, ¶¶ 9, 36; *see also id.*, ¶¶ 57, 64 (Ziegler, J., concurring in part, dissenting in part).

■

¶ 27. What is reasonably clear from the supreme court's decision in *State v. Negrete*, 2012 WI 92, 343 Wis. 2d 1, 819 N.W.2d 749, however, is that a defendant has an initial pleading burden to make particularized allegations showing a "causal nexus" between the defendant's plea and likely deportation. *See id.*, ¶ 26; *see also id.*, ¶¶ 3, 17–18, 20–21, 27–28. Further, *Negrete* makes clear that, if a defendant satisfies this initial pleading burden, then the defendant is entitled to an evidentiary hearing in order to prove the requisite causal nexus, that is, to prove that his plea is "likely to result in" deportation. *See id.*, ¶¶ 1, 3, 26.[4]

■

¶ 28. Accordingly, we view the question here as being whether Reyes Fuerte's motion made sufficient allegations to entitle him to an evidentiary hearing. This presents a question of law that we review de novo. *See id.*, ¶ 17. Although the parties do not frame their arguments in terms of this pleading burden, we discuss

---

[4] There may be an exception to this evidentiary hearing requirement when "the record conclusively demonstrates that the defendant is not entitled to relief." *See State v. Negrete*, 2012 WI 92, ¶ 17, 343 Wis. 2d 1, 819 N.W.2d 749. Regardless, we see no plausible argument here that the record conclusively demonstrates that Reyes Fuerte is not entitled to relief.

their arguments as if they do because nothing in their arguments suggests that they disagree that this is the applicable framework.

¶ 29.   Reyes Fuerte effectively argues that he has sufficiently alleged a deportation consequence by alleging that one of his pleas prevents him from qualifying for a "cancellation" defense to deportation. The State responds to this argument by, essentially, contending that the allegations in Reyes Fuerte's motion are insufficient. We disagree with the State. As explained below, we conclude that Reyes Fuerte's allegations sufficiently allege that it was "likely" that his felony plea to fleeing an officer would lead to deportation.

¶ 30.   Reasonably construed, Reyes Fuerte's motion alleges all of the following:

- When Reyes Fuerte entered his 2014 pleas to crimes committed in 2012, including the felony fleeing an officer crime, he was already the subject of deportation proceedings initiated in 2013.[5]

- Under 8 U.S.C. § 1229b(b)(1), Reyes Fuerte's circumstances before his pleas and convictions would have provided him a defense to the deportation proceedings, namely, the discretionary "cancellation" of deportation.[6]

- The circumstances pertinent to the cancellation defense include that Reyes Fuerte has been physically

---

[5] Reyes Fuerte's motion alleges that his "2012 conviction left him ineligible to defend against deportation." The date in this sentence and similar references to his "2012" convictions and pleas are obvious mistakes. The larger context of the motion shows that Reyes Fuerte must be referring to his current 2014 pleas and convictions for the crimes committed in 2012. The State, sensibly, does not argue otherwise.

[6] 8 U.S.C. § 1229b(b)(1) provides:

    **(b)**  CANCELLATION OF REMOVAL AND ADJUSTMENT OF STATUS FOR CERTAIN NONPERMANENT RESIDENTS

present in the United States for more than 10 years and has two United States citizen children, one of whom suffers from a very serious health problem.

- Under 8 U.S.C. § 1229b(b)(1)(C), this discretionary cancellation defense is not available to someone who has committed a "crime involving moral turpitude."

- Reyes Fuerte's felony fleeing an officer conviction is a crime involving moral turpitude under the Seventh Circuit's decision in *Cano-Oyarzabal v. Holder*, 774 F.3d 914 (7th Cir. 2014).[7]

---

**(1)** In GENERAL The Attorney General may cancel removal of, and adjust to the status of an alien lawfully admitted for permanent residence, an alien who is inadmissible or deportable from the United States if the alien—

**(A)** has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application;

**(B)** has been a person of good moral character during such period;

**(C)** has not been convicted of an offense under section 1182(a)(2) [referring to crimes involving moral turpitude], 1227(a)(2), or 1227(a)(3) of this title, subject to paragraph (5); and

**(D)** establishes that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence.

[7] In his motion, Reyes Fuerte accurately cited *Cano-Oyarzabal v. Holder*, 774 F.3d 914 (7th Cir. 2014), for the proposition that attempting to flee or elude an officer is a crime involving moral turpitude for purposes of immigration law. *See id.* at 915 ("In light of the statute's requirement that to be convicted a person must 'knowingly' flee or attempt to elude an officer after receiving an officer's signal, we find the Board's determination reasonable. Knowingly fleeing or attempting to elude an officer is an act wrong in itself and therefore a crime involving moral turpitude.").

- But for Reyes Fuerte's conviction of this crime, he would still be eligible for the cancellation defense.

In sum, the gist of Reyes Fuerte's pertinent allegations was that his plea to the fleeing an officer charge affected his ongoing deportation situation because, but for that plea, he would have had a viable cancellation defense to the pre-existing deportation proceedings.

¶ 31. We have difficulty following the State's reasoning as to why it views these allegations as insufficient under *Negrete*. To put what we think are the State's arguments in context, we first further summarize *Negrete*.

¶ 32. The *Negrete* court's more specific holding, as matters here, was that the defendant must "allege facts demonstrating a causal nexus between the entry of the . . . plea at issue and the federal government's likely institution of adverse immigration actions consistent with § 971.08(1)(c)." *Negrete*, 343 Wis. 2d 1, ¶ 26. The defendant in *Negrete* alleged only that he was convicted of a certain type of offense and that he was " 'now the subject of deportation proceedings.' " *See id.*, ¶ 36. The court in *Negrete* concluded that these "bare allegations" were not enough, reasoning that "[a] defendant's motion should not require the circuit court or a reviewing court to speculate about the factual basis for the requisite nexus." *Id.*, ¶¶ 36–37. The court in *Negrete* went on to suggest alternative ways by which the defendant might allege the requisite "causal nexus." *See id.*, ¶¶ 26–27 & n.8, 37.

¶ 33. The State appears to argue that Reyes Fuerte's allegations were insufficient because, in the State's words, Reyes Fuerte failed to provide "proof" beyond a "general and conclusory cite to the federal statute 'listing the elements' for cancellation of re-

121

moval." We disagree. Reyes Fuerte's citation to the statute—along with case law and with specific facts about Reyes Fuerte's history and family that the State ignores—appears to track one of the alternatives that the *Negrete* court suggested would meet the initial pleading burden. *See id.*, ¶ 27 n.8 (stating, in part: "[I]f a defendant chooses to establish that the crime to which the defendant pleaded is one for which the defendant would have been subject to potentially adverse immigration consequences under controlling federal law, the defendant should cite the federal law upon which reliance is placed.").

¶ 34. We acknowledge that other alternatives listed by the *Negrete* court refer to communications from federal actors connecting the defendant's plea to an adverse immigration consequence. *See id.*, ¶¶ 27, 37. However, we do not read *Negrete* as saying that such additional allegations regarding such communications are required in all cases.

¶ 35. Notably, unlike the deficient allegations examined by the *Negrete* court, the allegations here do not "require the circuit court or a reviewing court to speculate about the factual basis for the requisite nexus." *See id.*, ¶ 37. Reyes Fuerte alleged that, but for his plea, he would have been eligible for a cancellation defense in his ongoing deportation proceedings, and he provided factual allegations and legal citations to support that allegation.

¶ 36. The State also appears to argue that Reyes Fuerte's motion should fail under *Negrete* because Reyes Fuerte did not allege that his pleas resulted in the *commencement* of deportation proceedings. Rather, as the State correctly asserts, Reyes Fuerte alleged "that his conviction prevents him from qualifying for cancellation" in proceedings already commenced.

¶ 37. We do not understand the discussion in *Negrete* as addressing, one way or the other, situations in which the defendant's plea has an alleged effect on previously instituted deportation proceedings. It is true that, as indicated above, the *Negrete* court used terms such as "institute" or the "institution" of "immigration consequences" listed in WIS. STAT. § 971.08(2). *See Negrete*, 343 Wis. 2d 1, ¶¶ 26–27 & n.8. However, the facts in *Negrete* did not involve pre-existing immigration-status proceedings at the time of the plea, and we see no reason to think that the court in *Negrete* was using these terms narrowly to exclude situations in which a plea might change the course of ongoing deportation proceedings.

¶ 38. For that matter, we see nothing in the text of WIS. STAT. § 971.08(2) suggesting that the statute excludes ongoing deportation situations. Rather, as noted, the statute simply refers to whether a defendant's plea "is likely to result in the defendant's deportation" or another adverse immigration consequence. WIS. STAT. § 971.08(2).

¶ 39. What remains is a question that the parties here do not address in any meaningful way, namely, one of the questions we certified in *Valadez*: "How definite or imminent must deportation be in order for it to be 'likely' . . .?" *Valadez*, Nos. 2014AP678, 2014AP679, 2014AP680, unpublished certification, at 1. As noted above, the supreme court did not need to address this topic in *Valadez*. In the absence of supreme court guidance and briefing by the parties, we conclude that Reyes Fuerte's allegations are sufficient for purposes of the "likely" standard.

¶ 40. Reyes Fuerte's pleading clearly alleged that his cancellation defense has been lost due to his plea to the fleeing an officer charge. That is, he has sufficiently

123

alleged that his plea to this charge makes it likely that he will be deported because the plea takes away his only defense to deportation. But is this a change in Reyes Fuerte's circumstances? Was Reyes Fuerte likely to be deported even absent this plea? In this circumstance, we conclude that the burden on Reyes Fuerte was to sufficiently allege that his plea made the difference between there being a chance that he would be deported and it being likely that he would be deported in the ongoing proceedings. We conclude that Reyes Fuerte has met that burden here.

¶ 41.  Fairly read, Reyes Fuerte's motion alleges that his long-term presence in the United States, along with having two United States citizen children, one of whom suffers from a very serious health problem, provided him with a substantial defense to deportation. He further sufficiently alleged that this defense was eliminated by one of his guilty pleas, thereby making deportation likely. That is, Reyes Fuerte has alleged facts showing that his status changed from an unspecified chance of deportation to a likelihood of deportation.

¶ 42.  Turning to the remedy, we decline to simply order plea withdrawal. Many of the allegations in Reyes Fuerte's motion are simply that, allegations. Has Reyes Fuerte really been in the United States over ten years? Does he actually have United States citizen children? Absent a stipulation by the State, these and at least some of the related allegations are "facts" that Reyes Fuerte must prove to the circuit court's satisfaction.

## Conclusion

¶ 43.  For the reasons stated above, we reverse the order denying Reyes Fuerte's motion for plea withdrawal under Wis. Stat. § 971.08. We remand for the

124

circuit court to hold an evidentiary hearing at which Reyes Fuerte will have the opportunity to prove that his felony plea to fleeing an officer is likely to result in deportation.

*By the Court.*—Order reversed and cause remanded for further proceedings.