SHIRLEY S. ABRAHAMSON, J.
¶ 1. This case *334 involves the intersection of Wisconsin criminal law and federal immigration law.[1]
¶ 2. This is an appeal from an order of the Circuit Court for Walworth County, David M. Reddy, Judge. The circuit court denied the motion of the defendant, Melisa Valadez, to withdraw her guilty pleas.
¶ 3. Ms. Valadez's motion to withdraw her guilty pleas is based on Wis. Stat. § 971.08(2) (2011-12).[2] Before we examine § 971.08(2), we examine § 971.08(l)(c). Wisconsin Stat. § 971.08(l)(c) requires that before a circuit court accepts a plea of guilty or no contest, the circuit court "shall. . . [a]ddress the defendant personally and advise the defendant as follows: 'If you are not a citizen of the United States of America, you are advised that a plea of guilty or no contest for the offense with which you are charged may result in deportation, the exclusion from admission to this country or the denial of naturalization, under federal law.'"
*335 ¶ 4. The circuit court's colloquies with Ms. Valadez did not adhere to this statute. Judge John R. Race and Judge Robert J. Kennedy presided over the criminal proceedings in which Ms. Valadez entered guilty pleas. Neither of the circuit courts advised Ms. Valadez of the immigration consequences of a guilty plea as required by Wis. Stat. § 971.08(l)(c).
¶ 5. If a circuit court fails to advise a defendant of the immigration consequences (as required by Wis. Stat. § 971.08(l)(c)) and if the defendant shows that the plea is "likely" to result in the defendant's deportation,[3] exclusion from admission to this country, or denial of naturalization, the circuit court must ("shall") permit withdrawal of the plea and permit the defendant to enter another plea.
¶ 6. Section 971.08(2) provides as follows:
(2) If a court fails to advise a defendant as required by sub. (l)(c) and a defendant later shows that the plea is likely to result in the defendant's deportation, exclusion from admission to this country or denial of naturalization, the court on the defendant's motion shall vacate any applicable judgment against the defendant and permit the defendant to withdraw the plea and enter another plea. This subsection does not limit the ability to withdraw a plea of guilty or no contest on any other grounds.
¶ 7. The court of appeals certified the instant case to this court pursuant to Wis. Stat. § (Rule) 809.61.
¶ 8. The appeal presents two questions:
1. Did Melisa Valadez's motion to withdraw her pleas of guilty satisfy the "likely" statutory *336 criterion in Wis. Stat. § 971.08(2) for mandatory vacation of the judgments of conviction, that is, did she show that her guilty pleas were "likely" to result in her exclusion from admission to this country?[4]
2. Is there a time limit for a defendant to file a motion to withdraw a plea based on Wis. Stat. § 971.08(2)?[5] The court of appeals further inquired: "How would such a time limit fit in with the possible need to await actual deportation proceedings before moving to withdraw the plea?"
*337 ¶ 9. In response to the first question, for the reasons set forth, we conclude that Ms. Valadez has demonstrated that the circuit court did not comply with Wis. Stat. § 971.08(l)(c) and that her guilty pleas are "likely" to result in her exclusion from admission to this country. Because Ms. Valadez has shown that her guilty pleas are "likely" to result in her exclusion from admission to this country, we need not reach the question of whether her pleas are also "likely" to result in deportation or denial of naturalization. Accordingly, we reverse the order of the circuit court and remand the cause to the circuit court to vacate the judgments of conviction and to permit Ms. Valadez to withdraw her guilty pleas and enter new pleas.
¶ 10. The court of appeals raised the second question because although the majority opinion in State v. Romero-Georgana, 2014 WI 83, ¶ 67 n.14, 360 Wis. 2d 522, 849 N.W.2d 668, did not adopt a time limit on a Wis. Stat. § 971.08(2) motion, it strongly suggested that (at least in certain circumstances) there should be a time limit.[6]
¶ 11. We do not respond to the second question. Although both parties discussed the time limit issue in their briefs, neither party argued in this court for a time limit for plea withdrawal under Wis. Stat. § 971.08(2), and both parties agreed that even if the court were to adopt a time limit, Ms. Valadez's motion is timely. At oral argument, the State conceded it was not arguing for a time limit on motions under Wis. *338 Stat. § 971.08(2), and even if the court were to adopt a time limit, Ms. Valadez's motion was timely.[7]
¶ 12. In Romero-Georgana, the court noted that four months before the defendant's postconviction motion under Wis. Stat. § 974.06 was filed, the federal government had started an investigation into the defendant's deportability.[8] Nevertheless, the defendant in Romero-Georgana pressed forward with his Wis. Stat. § 974.06 motion, without bringing a Wis. *339 Stat. § 971.08(2) motion, and without asking the court to construe the Wis. Stat. § 974.06 motion as a Wis. Stat. § 971.08(2) motion.[9]
¶ 13. Under those circumstances, the RomeroGeorgana court expressed concern about judicial efficiency, stating that "[w]hen a defendant has notice that he is likely to be deported and subsequently brings postconviction claims unrelated to Wis. Stat. § 971.08(2), we think it would be unwise to allow him to bring his claim as a § 971.08(2) motion at a later time, although he may be able to bring his claim as a Wis. Stat. § 974.06 motion if he has a sufficient reason for the delay."[10]
¶ 14. The circumstances that concerned the court in Romero-Georgana are not at issue here. Ms. Valadez has not brought other postconviction motions. Ms. Valadez has not, with notice of a ripe claim, sat on her rights. Moreover, neither Ms. Valadez's counsel nor the State argued for a time limit on Wis. Stat. § 971.08(2) motions, and the State conceded that Ms. Valadez's motion would be timely even under the time limit suggested in Romero-Georgana.
¶ 15. Because the parties agree and do not present adversarial positions, we do not address the second question.[11]
*340 I
¶ 16. The facts are not in dispute for purposes of this appeal.
¶ 17. The defendant, Melisa Valadez, is not a citizen of the United States. She became a Lawful Permanent Resident (LPR) in 2001, when she was 15 years old. Her three children were born in the United States.
¶ 18. Ms. Valadez was convicted in 2004 and 2005 (when she was 19 years old) of possession of cocaine, possession of THC, and possession of drug paraphernalia in three separate cases on pleas of guilty.[12] To the extent it may be relevant under federal immigration law,[13] the offenses underlying the first two cases — possession of cocaine, two counts of possession of THC, and two counts of possession of drug paraphernalia — occurred when Ms. Valadez was 18 years old. The offense underlying the third case, possession of THC as a repeater, occurred when she was 19 years old.
¶ 19. The transcripts of the plea hearings clearly show that the circuit court failed to warn Ms. Valadez, as required by Wis. Stat. § 971.08(l)(c), that her pleas and subsequent convictions may have immigration consequences.
¶ 20. As a result of these convictions, Ms. Valadez served jail time and was placed on probation. She was ordered to pay fines, have an AODA assessment, and get alcohol counseling. She has fulfilled all the conditions imposed by the circuit courts and has *341 had no subsequent convictions in the decade since these 2004-2005 convictions.
¶ 21. In 2013, Ms. Valadez filed a motion under Wis. Stat. § 971.08(2) to withdraw her guilty pleas, arguing that as a result of the convictions she is unable to renew her LPR card; she is subject to deportation; she likely would be excluded from admission to the United States if she left the country; and she likely would be denied naturalization if she applied to become a naturalized American citizen.
¶ 22. At the initial hearing on Ms. Valadez's motion to withdraw her plea, the circuit court granted her additional time to attempt to acquire an affidavit or some narrative of verbal communications with a federal agent in order to meet the requirements of this court's decision in State v. Negrete, 2013 WI 92, 343 Wis. 2d 1, 819 N.W.2d 749.
¶ 23. To supplement Ms. Valadez's initial brief, defense counsel submitted e-mail communications between counsel and an Immigration and Customs Enforcement (ICE) Special Agent. The e-mails were introduced apparently to confirm a telephone call between defense counsel and the ICE Special Agent regarding immigration law and enforcement practices. The e-mails did not confirm or challenge defense counsel's views of immigration law.
¶ 24. Citing Negrete (especially footnote 8), the circuit court denied Ms. Valadez's motion to withdraw her pleas. Footnote 8 in Negrete states as follows:
More specifically, if a defendant chooses to establish that the crime to which the defendant pleaded is one for which the defendant would have been subject to potentially adverse immigration consequences under controlling federal law, the defendant should cite the federal law upon which reliance is placed. For ex *342 ample, under federal law, 8 U.S.C. § 1227 (2006) delineates numerous categories of aliens who are potentially deportable. Relevant to motions under Wis. Stat. § 971.08(2) is the federal statute providing that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." 8 U.S.C. § 1227(a)(2)(A)(iii). See State v. Baeza, 174 Wis. 2d 118, 127, 496 N.W.2d 233 (Ct. App. 1993).
In addition, in such a motion, a defendant should allege that the federal government has conveyed its intent to impose one of the enumerated immigration consequences set out in Wis. Stat. § 971.08(2). This required nexus between the crime to which a plea was made and adverse immigration consequences can be demonstrated by alleging facts that show that, because of his plea, the defendant has become subject to deportation proceedings, has been excluded from admission to the country, or has been denied naturalization.
Negrete, 343 Wis. 2d 1, ¶ 27 n.8.
¶ 25. Relying on footnote 8 in Negrete, the circuit court reasoned that Ms. Valadez had not met the statutory standard of "likely" to suffer the enumerated immigration consequences, because she is not presently the object of a proceeding for deportation, exclusion from admission, or denial of naturalization. The circuit court concluded the hearing stating: "Gratuitously, I will say that I think that this area is ripe for some clarification from the appellate court."
¶ 26. The court of appeals certified the instant case to this court. The court of appeals wrote that the "degree of certainty necessary to show, for purposes of plea withdrawal under Wis. Stat. § 971.08(2), that a defendant is likely to suffer immigration consequences as a result of a guilty plea is not clear under existing case law."
*343 II
¶ 27. This case requires us to interpret and apply Wis. Stat. § 971.08(2) to the undisputed facts. The interpretation and application of a statute to undisputed facts are ordinarily questions of law which this court determines independently of the circuit court and court of appeals, but benefiting from their analyses.[14] We begin with the text of the statute and examine case law interpreting and applying the statute.
Ill
¶ 28. In order to withdraw a guilty or no contest plea under Wis. Stat. § 971.08(2), the statute requires a defendant to allege: (1) that the circuit court "fail[ed] to advise [the] defendant as required by [Wis. Stat. § 971.08(l)(c)]"; and (2) that the defendant's plea "is likely to result in the defendant's deportation, exclusion from admission to this country, or denial of naturalization . . . ,"[15]
¶ 29. No one disputes that Ms. Valadez has met the first requirement. Transcripts of the plea colloquies are available; the circuit courts did not provide the immigration warning required under Wis. Stat. § 971.08(l)(c). As case law demonstrates, it is of utmost importance that circuit courts adhere to § 971.08(l)(c) in plea colloquies.
*344 ¶ 30. At issue is whether Ms. Valadez showed that her guilty pleas are "likely" to result in one of the enumerated immigration consequences. If Ms. Valadez makes this showing, she may withdraw her pleas and enter new ones, irrespective of whether she was otherwise aware of such consequences. State v. Douangmala, 2001 WI 62, ¶¶ 22—25, 42, 253 Wis. 2d 173, 646 N.W.2d 1.
¶ 31. Ms. Valadez was convicted more than 10 years ago for violations of laws relating to controlled substances. She does not allege she is the subject of a deportation proceeding. According to the record, the federal government has not taken any steps to deport her and has not manifested any intent to deport her.
¶ 32. Ms. Valadez's case was not presented in this court, however, as solely a deportation case. Ms. Valadez argues that unlike many who seek to vacate guilty pleas by merely claiming they are "likely" to be deportable, she is claiming that she is "likely" to be excluded from admission.
¶ 33. Ms. Valadez claims that even though she is a Lawful Permanent Resident, if she were to leave the United States and seek to return, she would be excluded from admission as a result of her convictions. She cites 8 U.S.C. 1182(a)(2)(A)(i)(II) to support her claim.[16]
*345 ¶ 34. The State argues that Ms. Valadez's reliance on the federal statutes that render her excluded from admission is misplaced. According to the State, what would happen if Ms. Valadez left the country and was excluded from admission does not prove that she is likely to be excluded from admission.
¶ 35. Quoting extensively from the Negrete decision, the State contends that Ms. Valadez has not met the burden set forth in Negrete: She has failed, according to the State, to allege facts showing that she is "likely" to be excluded from admission.
¶ 36. Because Negrete interpreted Wis. Stat. § 971.08(2), we examine Negrete. Negrete is distinguishable and does not govern the instant case. The Negrete case governs a non-citizen's motion to withdraw a guilty plea under Wis. Stat. § 971.08(2) based on "likely" deportation. Although Negrete refers to the other immigration consequences enumerated in Wis. Stat. § 971.08(2) — "likely" exclusion from admission to this country or "likely" denial of naturalization[17]— Negrete was a deportation case, and the standard it *346 sets forth governs deportation; it does not govern "likely" exclusion from admission.
¶ 37. In Negrete, the defendant pleaded guilty in 1992 to one count of second-degree sexual assault of a person under the age of 16, in violation of Wis. Stat. § 948.02(2) (1991-92).[18] No transcript of the plea colloquy was available.[19]
¶ 38. Negrete sought to withdraw his guilty plea in 2010, citing Wis. Stat. § 971.08(2). Negrete alleged in his motion to withdraw his plea that the circuit court did not inform him of the potential immigration *347 consequences of his plea. In contrast, Negrete's affidavit stated that he " 'd[id] not recall' whether he received the necessary warning."[20]
¶ 39. Based on the equivocal assertions in the defendant's motion and affidavit, the Negrete court concluded that Negrete had not sufficiently alleged that the circuit court failed to advise him of the potential immigration consequences of his plea.[21] Despite this ground for denying Negrete's motion, the Negrete court moved on to discuss the "likely" prong of Wis. Stat. § 971.08(2).
¶ 40. Negrete's motion alleged that he was "now the subject of deportation proceedings."[22] Negrete's affidavit alleged that he was "now subject to deportation proceedings."[23] The Negrete court concluded that Negrete's "[b]are allegations of possible deportation" were insufficient to show his plea was "likely" to result in deportation.[24]
¶ 41. In deportation proceedings, immigration officials seek out those who are deportable. Given the role of immigration officials in seeking out those who are deportable, the Negrete court held that Negrete's equivocal assertion that he was "subject to" or "subject of' deportation was not sufficient to show he was actually "likely" to be deported or that deportation would be the result of the criminal offense.[25] Negrete had to allege facts demonstrating a causal nexus *348 between the entry of the guilty plea and the federal government's likely institution of deportation proceedings.[26] Bare allegations were not sufficient.
¶ 42. In contrast to deportation, a non-citizen would have to take affirmative steps in order to induce the federal government to exclude the non-citizen from admission to the United States. The federal government does not seek out individuals who may be excluded from admission or otherwise inform non-citizens that they may be excluded from admission to this country based on convictions for violating laws relating to controlled substances.
¶ 43. Instead, the federal government, through the statutes governing admission to this country, excludes only non-citizens with convictions for violating laws relating to controlled substances who affirmatively seek admission to the country. Short of Ms. Valadez taking the affirmative step of leaving the United States and actually being excluded from admission, Ms. Valadez has no way aside from the immigration and naturalization statutes to demonstrate that she is "likely" to be excluded from admission.
¶ 44. Ms. Valadez's convictions are, as stated previously, explicitly listed in federal statutes as grounds for exclusion from admission. Based on the federal statutes, if Ms. Valadez leaves the United States and attempts to gain readmission to this country, the federal government will "likely" exclude her from admission because of her convictions.
*349 ¶ 45. The circuit court mistakenly required Ms. Valadez to show that the federal government has taken steps to exclude her from admission. Section 971.08(2) does not require such a showing. The statute requires only that a defendant show that such a consequence is "likely." Here the text of the federal statute and the necessity that a defendant take affirmative steps to leave the country in order to actually be excluded from admission satisfy the "likely" test. In other words, the immigration and naturalization statutes demonstrate the likelihood that Ms. Valadez will be excluded from admission.
¶ 46. Requiring Ms. Valadez to leave the country and seek readmission to demonstrate that she is "likely" to be excluded from admission is the equivalent of asking her to demonstrate exclusion from admission to 100% certainty. Wisconsin Stat. § 971.08(2) requires an immigration consequence be "likely," not "certain."
¶ 47. When questioned at oral argument about exclusion from admission, the State conceded that "given her convictions, [Ms. Valadez] is inadmissible," but attempted to distinguish between her being inadmissible under the law and her actually being excluded from admission.
¶ 48. We are not persuaded by this distinction. Ms. Valadez has demonstrated that she will, as a matter of federal law, be excluded from admission should she take the affirmative step of leaving the country. She has thus shown she is likely to be excluded from admission.
¶ 49. The Wisconsin legislature afforded relief to a defendant "likely" to be excluded from admission. *350 Wisconsin Stat. § 978.02 does not require a defendant to show that he or she actually has been excluded from admission or that the federal government has manifested its intent to exclude the defendant from admission other than through the federal law providing for exclusion from admission.
¶ 50. To hold that Ms. Valadez cannot withdraw her guilty pleas because the federal government has not excluded her from admission is, as a matter of practicality, unworkable and effectively expunges an enumerated consequence — exclusion from admission —from Wis. Stat. § 971.08(2) [27]
¶ 51. We are convinced that if Ms. Valadez left the United States she would, as a matter of law, be excluded from admission. As a result, we are persuaded that it is "likely" that her guilty pleas will "result in [her] . . . exclusion from admission." To deny Ms. Valadez the opportunity to withdraw her pleas would render relief under the statutes illusory.
¶ 52. Because Ms. Valadez has met her burden of showing her guilty pleas are "likely" to result in her exclusion from admission to this country, we need not reach the question of whether her pleas are also "likely" to result in deportation or denial of naturalization.
¶ 53. In sum, Ms. Valadez has fulfilled the statutory requirements for withdrawing her pleas. The circuit court failed to give the warning required by Wis. Stat. § 971.08(l)(c) and Ms. Valadez's guilty pleas are "likely" to result in her exclusion from admission. Wis. Stat. § 971.08(2).
*351 ¶ 54. Accordingly, we reverse the order of the circuit court denying Ms. Valadez's motion to withdraw her guilty pleas..We remand the matter to the circuit court with directions to vacate the judgments of conviction and permit Ms. Valadez to withdraw her guilty pleas and enter other pleas.
¶ 55. By the Court. — The order of the circuit court is reversed and the cause is remanded.
¶ 56. REBECCA G. BRADLEY, J., did not participate.

 For general primers on various aspects of the intersection of criminal law and immigration law, see Margaret Colgate Love, Jenny Roberts & Cecelia Klingele, Collateral Consequences of Criminal Convictions: Law, Policy and Practice §§ 2:46-:60 (2013 ed.); Dan Kesselbrenner, Lory D. Rosenberg & Maria Baldini-Potermin, Immigration Law & Crimes (2015 ed.).
For information supplied by the federal agency responsible for naturalization, see U.S. Customs & Immig. Serv., Citizenship Through Naturalization, http://www.uscis.gov/ us-citizenship/citizenship-through-naturalization. For information regarding prosecutorial discretion in deportation cases, see U.S. Immigration and Customs Enforcement, Immigration Action, https://www.ice.gov/immigrationAction.
2 All subsequent references to the Wisconsin Statutes are to the 2011-12 version unless otherwise indicated.

 Federal statutes refer to deportation as "removal." See Padilla v. Kentucky, 559 U.S. 356, 364 n.6 (2010). We use the terms "removal" and "deportation" interchangeably.

 The court of appeals framed the issue as follows: "How definite or imminent must deportation be in order for it to be 'likely' such that a defendant may withdraw a guilty or no contest plea on the basis that he or she was not informed of the immigration consequences at the plea colloquy?"
The circuit court and court of appeals focused predominantly on deportation, although they occasionally referred to the other two immigration consequences — exclusion from admission to this country and denial of naturalization.
We restate the issue to reflect the key arguments of the parties in this court. Both parties briefed the immigration consequence of deportation, and Ms. Valadez briefed the consequence of denial of naturalization. However, especially in oral argument, the parties focused on Ms. Valadez's likely exclusion from admission as the ground for withdrawing her pleas, not deportation or denial of naturalization. This court does not have to reach the issues of either deportation or denial of naturalization because Ms. Valadez has met the burden of proving that exclusion from admission is likely.
Deportation has been addressed by this court in State v. Negrete, 2012 WI 92, 343 Wis. 2d 1, 819 N.W.2d 749; State v. Shata, 2015 WI 74, 364 Wis. 2d 63, 868 N.W.2d 93; and State v. Ortiz-Mondragon, 2015 WI 73, 364 Wis. 2d 1, 866 N.W.2d 717.

 See State v. Romero-Georgana, 2014 WI 83, ¶ 67 n.14, 360 Wis. 2d 522, 849 N.W.2d 668.

 The motion in Romero-Georgana was not a Wis. Stat. § 971.08(2) motion; it was a § 974.06 motion.

 The following exchange between Justice Ann Walsh Bradley and the assistant attorney general representing the State is informative:
Justice Ann Walsh Bradley: I have a question .... As I read on page 13 of your brief going on to page 14 it says, "like many similar defendants, Valadez did not pursue additional post-conviction relief beyond the motions underlying this consolidated appeal." Next sentence. "Even if she had, however, her [Wis. Stat. §] 971.08(2) claims should not be barred later because they are not yet viable." I saw that with some dissonance to footnote 14 in our Romero-Georgana case. I mean — I don't think you're embracing the time limit suggested for a 971.08(2).
Assistant Attorney General: No, I'm not, and I don't — I certainly don't think it's operable here. As the court pointed out earlier, the defendant in Romero-Georgana had filed several post-conviction motions already on notice, because he had been served with a detainer from Homeland Security that he was subject to immigration proceedings. So with knowledge of a ripe claim he sat on it. And that's what I think Romero-Georgana in that footnote speaks to and that's certainly not what's going on here.
Justice Ann Walsh Bradley: And you are not advocating that there be a time limit. Is it correct you are not advocating that there be a time limit imposed on 971.08(2) claims? Is that correct?
Assistant Attorney General: Yes.

 Romero-Georgana, 360 Wis. 2d 522, ¶ 67 n.14.

 Id.

 7d.

 See State v. Denk, 2008 WI 130, ¶ 32 n.5, 315 Wis. 2d 5, 758 N.W.2d 775 (stating that while the court of appeals' certification included several additional questions, "[t]hese questions are tangential to our inquiry . . .."); State v. Popanz, 112 Wis. 2d 166, 168 n.3, 332 N.W.2d 750 (1983) (refusing to answer a second certified question because the case was resolved on other grounds)

 On Ms. Valadez's motion, the court of appeals consolidated the three cases to facilitate briefing and disposition.

 See, e.g., 8 U.S.C. §§ 1182(a)(2)(A)(ii)(I), 1227(a)(2)(A)(i).

 State v. Negrete, 2012 WI 92, ¶ 15, 343 Wis. 2d 1, 819 N.W.2d 749; State v. Bobby G., 2007 WI 77, ¶ 42, 301 Wis. 2d 531, 734 N.W.2d 81.

 Wis. Stat. § 971.08(2) (emphasis added). See also State v. Negrete, 2012 WI 92, ¶ 23, 343 Wis. 2d 1, 819 N.W.2d 749.

 See 8 U.S.C. § 1182(a)(2)(A)(i)(II) (2012), providing:
Except as otherwise provided in this chapter, aliens who are inadmissible under the following paragraphs are ineligible to receive visas and ineligible to be admitted to the United States:
(2) Criminal and related grounds
(A) Conviction of certain crimes
(i) In general
*345 Except as provided in clause (ii), any alien convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of-
(II) a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of Title 21),
is inadmissible.

 Negrete, 343 Wis. 2d 1, ¶ 5 n.5.
In two other cases, the court has addressed deportation. The cases address ineffective assistance of counsel. Ineffective assistance of counsel is not involved in the instant case.
*346 In State v. Shata, 2015 WI 74, ¶¶ 59-61, 364 Wis. 2d 83, 868 N.W.2d 93, a case involving deportation and ineffective assistance of counsel, this court noted that although a person convicted of a violation of laws relating to controlled substances is deportable, "such a conviction will not necessarily result in deportation." The court concluded that defense counsel did not render defective performance in advising the defendant that his plea carried a strong chance of deportation. Shata, 364 Wis. 2d 83, ¶ 79.
In State v. Ortiz-Mondragon, 2015 WI 73, 364 Wis. 2d 1, 866 N.W.2d 717, a case involving deportation and ineffective assistance of counsel, Ortiz-Mondragon pleaded no contest to felony battery. He failed to show that defense counsel rendered deficient service when defense counsel conveyed the information regarding immigration consequences contained in the plea questionnaire and waiver of rights form.

 Negrete, 343 Wis. 2d 1, ¶ 5.

 Negrete, 343 Wis. 2d 1, ¶ 1. In Negrete, because no transcript was available, the court turned to State v. Bentley, 201 Wis. 2d 303, 548 N.W.2d 50 (1996), and concluded that Negrete failed to sufficiently allege that the plea-accepting court did not tell him of the potential immigration consequences of his plea. In the present case, the transcripts of the plea colloquies are available and clearly show the circuit court failed to give the required warnings. As a result, the "Bentley-type" analysis conducted in Negrete is unnecessary here. Negrete, 343 Wis. 2d 1, ¶ 33.

 Negrete, 343 Wis. 2d 1, ¶ 35.

 Id,., ¶ 25.

Id., ¶¶ 15, 36 (emphasis added).

Id., | 2 (emphasis added).

Id., ¶¶ 26, 36.

 Compare Negrete, 343 Wis. 2d 1, ¶¶ 5, 36 (quoting Negrete's motion, which stated that he was "now 'the subject of deportation proceedings'") (emphasis added), with Negrete, *348 343 Wis. 2d 1, ¶ 2 (stating that "Negrete's affidavit also states that he is now subject to deportation proceedings.") (emphasis added).

 Negrete, 343 Wis. 2d 1, ¶ 26.

 "[Sjtatutes are interpreted to avoid surplusage, giving effect to each word." State v. Hemp, 2014 WI 129, ¶ 13, 359 Wis. 2d 320, 856 N.W.2d 811.

 Given the way the second certified question was framed to this court by the court of appeals, the State's concessions may be understandable. The discussion by the court of appeals of time limits on Wis. Stat. § 971.08(2) claims was tethered to specific language in State v. Romero-Georgana, 2014 WI 83, 360 Wis. 2d 522, 849 N.W.2d 668. See Valadez, Nos. 2014AP678, 2014AP679, 2014AP680, slip op., *5-6 (Wis. Ct. App. Jan. 21, 2015). The parties agree that the discussion at issue in Romero-Georgana, which pertains to defendants who knowingly fail to assert ripe § 971.08(2) claims while pursuing unrelated postconviction claims, does not apply to Valadez's case. See Romero-Georgana, 360 Wis. 2d 522, ¶ 67 n.14. The State conceded that "Valadez did not pursue additional post-conviction relief beyond the motions underlying this consoli *354 dated appeal." Thus the concerns raised by the dissent, while reasonable, were not briefed or argued.
It also bears mentioning that the court of appeals formulated the second certified question largely in terms of the interplay between potential time limits and the need to await the institution of deportation proceedings. The court of appeals asked, "If, in order to withdraw the plea, the defendant must show that deportation proceedings are underway, how does this standard fit in with the time limits for a motion to withdraw the plea?" Valadez, slip op., *1-2 (emphases added). Yet the court disposes of today's case based on Valadez's ability to demonstrate the likelihood that she will be excluded from admission to this country, not a likelihood that she will be deported. Majority op., f 9. Obviously, then, Valadez does not need to wait for deportation proceedings to begin, which renders the question quoted above irrelevant. This is yet another reason not to attempt to decide the issue discussed by the dissent without briefing and argument.