SHIRLEY S. ABRAHAMSON, J. and ANN WALSH BRADLEY, J.
¶ 85. (dissenting). Stare decisis (Latin for "let the decision stand") is a basic tenet of the rule of law.[1] Although stare decisis is not a mechanical formula requiring blind adherence to precedent, departing from precedent requires special justification,[2] and " [n]o change in the law is justified by a change in the membership of the court or a case with more egregious facts."[3]
¶ 86. Although the majority opinion states that it "adher[es] to the important principle of stare decisis,"[4] it does not. The majority opinion, without special justification, departs from a unanimous, workable, and *220 settled precedent of this court, Waukesha County v. Steven H., 2000 WI 28, 233 Wis. 2d 344, 607 N.W.2d 607, and unjustly terminates the parental rights of Juanita A., a single mother with cognitive difficulties, to her son, Matthew D. The termination is based on continuing "child in need of protection or services" ("CHIPS") grounds.
¶ 87. At issue in the instant case is whether Juanita A. received notice required under Wis. Stat. §§ 48.356(2) and 48.415(2) of the grounds for termination of her parental rights and the conditions for the return of Matthew D. to her home.
¶ 88. The notice requirements contained in these two statutes are an important part of the "panoply of procedures" created by the legislature "to assure that parental rights will not be terminated precipitously or capriciously when the state exercises its awesome power to terminate parental rights."[5]
¶ 89. As the court of appeals in the instant case correctly concluded, under this court's unanimous decision in Steven H., Juanita A. did not receive the required statutory notice of the grounds for termination of her parental rights and the conditions for the return of her son.
¶ 90. Rather, over the course of these proceedings, at least 27 orders were issued, four of which were required under Wis. Stat. § 48.356(2) to contain written notice of the grounds for termination of her parental rights and the conditions for the return of Juanita A.'s son. Only one of those four orders[6] contained the *221 required notice. Oral warnings, also required by statute, were provided only three of the seven times they were required. See Wis. Stat. § 48.356(1). Compounding these notice deficiencies, after receiving the only order containing the required notice, Juanita A. received several orders containing contradictory information or suggesting that termination of her parental rights may no longer have been a risk.
¶ 91. The majority opinion sets aside these troubling facts, departs from Steven H., and concludes that one order containing a required statutory notice is sufficient to allow the termination of Juanita A.'s parental rights to Matthew D.[7] In so doing, the majority opinion withdraws the language in Steven H. adopting the "last order" notice rule and replaces it with an " at least one order" notice rule.[8]
¶ 92. We disagree with the majority opinion. We would adhere to the unanimous opinion in Steven H. and affirm the court of appeals in the instant case. We would hold that Juanita A. did not receive the required statutory notice of the grounds for termination of her parental rights and the conditions for the return of Matthew D.; the "last order" placing Matthew D. outside the home did not contain the required statutory notice.
¶ 93. We write separately to make two points:
1. The majority opinion departs from precedent. Although the statutes at issue in Steven H. and in the instant case have not changed, the majority opinion is misleading in stating that it "adher[es] to the important principle of *222 stare decisis" in "clarifying" Steven H. by limiting its holding to its facts.[9]
To interpret Steven H. as limited to its facts, the majority opinion withdraws the holding in Steven H. adopting the "last order" notice rule.[10]
The majority opinion is misguided. It ignores the accepted rules of statutory interpretation, dilutes the notice given to parents, and departs from precedent without special justification.
Nothing aside from the membership of the court has changed since Steven H. A change in membership of the court does not justify a departure from precedent.
2. The change in membership of this court— specifically,' the participation of Justice Rebecca G. Bradley, the author of the majority opinion in the instant case — appears inconsistent with past practice in this court and in the United States Supreme Court regarding the participation of a newly appointed justice in cases heard and tentatively decided prior to the new justice's joining the court.[11]
¶ 94. For the reasons set forth, we dissent and write separately.
*223 > — I
¶ 95. In Steven H., this court addressed whether written notice of the grounds for termination of parental rights and the conditions necessary for the child to be returned to the home is required, as Wis. Stat. § 48.356 states, in "any written order"[12] placing the child outside the home, or in "one or more court orders. . . containing the notice required by s. 48.356(2). . ." as stated in Wis. Stat. § 48.4l5(2)(a)l.[13]
*224 ¶ 96. In other words, two statutes that are not consistent govern the notice requirements in CHIPS and termination of parental rights proceedings. The court unanimously so concluded in Steven if.:[14] "[Although Wis. Stat. § 48.356(2) speaks of written notice in any order placing the child outside the home, § 48.415(2) speaks of one or more court orders placing the child containing written notice."[15] "The words 'one or more orders' in § 48.415(2) are not the equivalent of 'any,' 'each,' 'all,' or 'every' order."[16]
¶ 97. To harmonize this inconsistency, the Steven H. court unanimously held: (1) that Wis. Stat. §§ 48.356(2) and 48.415(2) did not require that every order removing a child from his or her home contain the notice prescribed by Wis. Stat. § 48.356(2); and (2) "that Wis. Stat. §§ 48.356(2) and 48.415(2) require that the last order specified in § 48.356(2) placing a child outside the home, which must be issued at least six months before the filing of the petition to terminate parental rights, must contain the written notice prescribed by § 48.356(2)."[17] Nonetheless, the court advised that circuit courts should include the written notice required by Wis. Stat. § 48.356(2) in all orders to which the statute applies.[18] The notice can easily be attached to each written order.
¶ 98. The majority opinion's rejection of the "last order" notice rule in Steven H. and adoption of an "at least one order" notice rule[19] is misguided for the following reasons.
*225 ¶ 99. First, contrary to the majority opinion's insinuations of conflict in decisions of the court of appeals, the "last order" notice rule is settled law in Wisconsin.
¶ 100. Relying on a court of appeals decision issued shortly after Steven H. was mandated in 2000, namely Waushara County v. Lisa K., 2000 WI App 145, 237 Wis. 2d 830, 615 N.W.2d 204, the majority opinion explains, that even though the "last order" in the instant case did not contain the required notice, notice was still adequate.
¶ 101. In Lisa K, the court of appeals did not apply Steven H.'s "last order" notice rule. Instead, Lisa K. distinguished Steven H. on its facts, noting that in Lisa K., the required notices of the grounds for termination of parental rights and the conditions for the return of the child were given on all occasions they were required except in the last order, and the parent did not complain of confusion as a result of the absence of notice.[20] As a result, " [considering Steven H.'s dual focus on adequate notice of the conditions with which a parent must comply and the warning that parental rights are in jeopardy," the court of appeals concluded that Lisa K. had "more than adequate notice . . . ."[21]
¶ 102. Lisa K. is distinguishable. Unlike the parent in Lisa K., Juanita A. understandably complains of confusion in the instant case. Juanita A. did not *226 receive the required notice in three of the four orders placing Matthew D. outside her home. After receiving the only order containing the required notice, Juanita A. received orders containing contradictory information or suggesting that her parental rights to Matthew D. were no longer in jeopardy.[22] The circuit court's oral warnings regarding termination of parental rights and the conditions for the return to the home were also deficient. Oral warnings were provided on three of the seven occasions they were required, and were not given at the final hearing.
¶ 103. Although the majority opinion relies on Lisa K., it does not adopt the "adequate notice" standard adopted in Lisa K.[23]
¶ 104. Instead, the majority opinion relies on Lisa K. to demonstrate its contention that "Steven H. has created a question in the court of appeals and circuit courts as to whether Steven H. created a bright-line rule requiring that the last order in a CHIPS case contain the written notice in order to satisfy Wis. Stat. § 48.415(2)(a)l. Courts . . . are ruling different ways on this question."[24]
¶ 105. Lisa K. is the only court of appeals decision cited by the majority opinion that concludes that failing to provide notice of the grounds for termination of parental rights and the conditions necessary for the *227 child to be returned to the home in the "last order . . . placing the child outside the home, which must be issued at least six months before the filing of the petition to terminate parental rights"[25] does not require dismissal of the petition to terminate parental rights.
¶ 106. In fact, the court of appeals has consistently followed the "last order" notice rule in Steven H. As the court of appeals put it in the instant case, Steven H.'s adoption of the "last order" notice rule "was unequivocal. The last order must contain the notice prescribed by Wis. Stat. § 48.356(2)."[26]
| 107. For cases recognizing and applying the "last order" notice rule in Steven H., see, for example:[27]
• State v. Amelia A., Nos. 2015AP630 — 31, unpublished slip op., If 10-11 (Wis. Ct. App. June 9, 2015);
• Portage Cnty. DHHS v. Julie G., No. 2014AP1057, unpublished slip op., ¶¶ 20-21 (Wis. Ct. App. July 31, 2014);
• Florence Cnty. DHS v. Jennifer B., Nos. 2011AP88-90, unpublished slip op., ¶ 11 (Wis. Ct. App. Aug. 19, 2011);
*228 • Walworth Cnty. v. Jeanna R., No. 2009AP1952, unpublished slip op., ¶¶ 16-17 (Wis. Ct. App. Nov. 11, 2009);
• Dunn Cnty. DHS v. Debra O., Nos. 2008AP1775-77, unpublished slip op., ¶¶ 6-7 (Wis. Ct. App. Jan. 9, 2009); and
• State v. Zena H., Nos. 99-1777, 99-1813, unpublished slip op., ¶ 17 (Wis. Ct. App. Apr. 25, 2000).
¶ 108. The majority opinion cites some (but not all) of these authorities, but fails to recognize the court of appeals' consistent recognition and application of the "last order" notice rule adopted by Steven H.[28]
¶ 109. Instead, the majority opinion argues that these cases "demonstrate the factual variations that arise in TPR cases and how the courts have reached differing decisions based on Steven H."[29] Simply because different cases, with different facts, raising different legal issues have arisen since Steven H. does not undermine Steven H.'s unanimous, "unequivocal," "last order" notice rule.
¶ 110. Wisconsin jury instructions also recognize the "last order" notice rule adopted by Steven H. See Comment, Wis JI — Children 324A.
¶ 111. Second, the majority opinion relies on Pierce County v. Amy F, No. 2004AP1552, unpublished slip op. (Wis. Ct. App. Aug. 31, 2004), to support its position that courts are ruling in different ways on whether Steven H. created a bright-line rule requiring that the last order in a CHIPS case contain the written notice.[30]
*229 ¶ 112. Amy F. is inapposite. It addressed a different question, namely whether a petition to terminate parental rights should be dismissed because the parent did not receive the "last order."
¶ 113. Third, the "last order" notice rule unanimously adopted in Steven H., unlike the "at least one order" notice rule adopted by the majority opinion in the instant case, fulfills the expressed legislative purposes of the Children's Code.
¶ 114. As the court stated in Steven H., the expressed legislative purposes of the Children's Code, set forth in Wis. Stat. §48.01, "assistD the court in interpreting the inconsistent language of the two statutes."[31] Among other things, the expressed purposes *230 include "assisting] parents ... in changing any circumstances in the home which might harm the child... ," and "providing] judicial and other procedures through which . . . interested parties are assured fair hearings and their constitutional and other legal rights are recognized and enforced. . . Wis. Stat. § 48.01(l)(a), (ad).
¶ 115. Unlike the majority opinion's "at least one order" notice rule, the "last order" notice rule ensures that parents "will be given adequate notice of the conditions for return and time to make any necessary changes to forestall the termination of parental rights . . . ." while avoiding the confusion that might result if a parent receives orders without the statutory notice after receiving earlier orders containing the required notice.[32]
¶ 116. Moreover, the majority opinion's "at least one order" notice rule dilutes the notice received by parents. Because petitions to terminate parental rights based on continuing CHIPS are filed by the State or county, the circuit court does not necessarily know whether an order placing a child outside the home will be the "last order."[33] As a result, circuit courts have an incentive under the "last order" notice *231 rule to provide notice in all CHIPS orders. Under the majority opinion, a circuit court can simply provide the warnings in the first order placing the child outside the home and dispense with notice thereafter.
¶ 117. Although the majority opinion expresses "confiden[ce]" that its holding will not dilute the notice received by parents,[34] the court is wading into dangerous waters. "A parent's desire for and right to the companionship, care, custody, and management of his or her children is an important interest that undeniably warrants deference and, absent a powerful countervailing interest, protection." Sheboygan Cnty. v. Julie A.B., 2002 WI 95, ¶ 22, 255 Wis. 2d 170, 648 N.W.2d 402 (internal quotation marks omitted). Diluting the notice received by parents of the grounds for termination of parental rights and the conditions for the child's return undermines the fairness and adequacy of termination of parental rights proceedings and may raise significant constitutional due process issues.
¶ 118, Fourth, the majority opinion's interpretation of Wis. Stat. § 48.415(2) ignores and violates accepted rules of statutory interpretation. The majority opinion states that " [o]ur standards for interpreting statutes are well-known and need not be repeated here."[35] It appears that the majority opinion's failure to state the rules resulted in the majority opinion's failure to apply them.
¶ 119. The majority opinion examines Wis. Stat. § 48.415(2), but essentially ignores the text of a related statute § 48.356(2). The majority opinion states that because this is a termination of parental rights case, *232 "not a CHIPS case," only Wis. Stat. § 48.415(2) is relevant.[36] This conclusion ignores the fact that § 48.415(2) deals specifically with termination of parental rights actions based on CHIPS and cross-references "the notice required by [Wis. Stat. §] 48.356(2)."[37]
¶ 120. In its plain-meaning analysis, the majority opinion overlooks the well-accepted rule that context is important to meaning, as is the structure of the statute in which the operative language appears. Statutory language is interpreted in the context in which it is used, as part of a whole; not in isolation, but in relation to the language of surrounding or closely related statutes.[38] Thus, the majority opinion errs in its statutory interpretation.
¶ 121. Furthermore, as we stated previously, the majority opinion dilutes the statutory notice requirements and may be treading on the constitutional rights of a parent. A statutory interpretation that does not raise constitutional issues is preferable to one that does.[39]
¶ 122. Fifth and finally, the majority opinion is misleading when it states it is "clarifying" Steven H. by interpreting Steven H. to be limited to its facts.[40] The "unequivocal" holding of Steven H. is not limited to its *233 facts. Steven H. expressly applies to termination of parental rights cases based on continuing CHIPS. The Steven H. court states:
We conclude that Wis. Stat. §§ 48.356(2) and 48.415(2) require that the last order specified in § 48.356(2) placing a child outside the home, which must be issued at least six months before the filing of the petition to terminate parental rights, must contain the written notice prescribed by § 48.356(2).
Steven H., 233 Wis. 2d 344, ¶ 3; see also Steven H., ¶ 31.
¶ 123. The majority opinion explicitly withdraws this holding of Steven H.,[41] ostensibly to "clarify" that Steven H. applied only to its facts. But Steven H. unequivocally adopted a "last order" notice rule for termination of parental rights cases based on continuing CHIPS. Steven H. did not limit its holding to the precise facts and circumstances of that case.
¶ 124. Thus, the majority opinion's adoption of the "at least one order" notice rule departs from precedent. And no sufficient justification is provided for this departure.[42] Adhering to precedent is "the preferred course [of judicial action] because it promotes evenhanded, predictable, and consistent development of legal principles . . . and contributes to the actual and perceived integrity of the judicial process."[43]
¶ 125. "This court is more likely to overturn a prior decision when one or more of the following *234 circumstances is present: (1) Changes or developments in the law have undermined the rationale behind a decision; (2) there is a need to make a decision correspond to newly ascertained facts; (3) there is a showing that the precedent has become detrimental to the coherence and consistency in the law; (4) the prior decision is 'unsound in principle'; or (5) the prior decision is "unworkable in practice.' "[44]
¶ 126. The majority opinion does not state which, if any, of these circumstances justifies its departure from precedent in the instant case. The answer in the instant case is none.
¶ 127. No changes or developments in the law have occurred. No newly ascertained facts undermine the court's unanimous decision in Steven H.
| 128. To the contrary, subsequent circumstances bolster the unanimous holding in Steven H. Since Steven H. was decided in 2000, the legislature has amended Wis. Stat. § 48.415 nine times and Wis. Stat. § 48.356 twice.[45] By amending both statutes without removing the conflicting language or otherwise disturbing the "last order" notice rule in Steven H., the legislature "accepted and ratified" our holding.[46]
*235 ¶ 129. The majority opinion does not argue that the court's unanimous decision in Steven H. is detrimental to the coherence or consistency of the law or that it is unworkable. Contrary to the majority opinion's suggestion, the court of appeals has all but universally followed Steven H.'s "last order" notice rule.
| 130. At best, the majority opinion's sole justification for its departure from precedent is that Steven H. is unsound in principle because it does not "apply the statutory words chosen by the legislature."[47] Wrong! Steven H. applied the accepted rules of statutory interpretation.
¶ 131. As we explained more fully above (and as the Steven H. court unanimously concluded), the statutory words chosen by the legislature are inconsistent. Wisconsin Stat. § 48.356(2) requires that notice accompany "any written order" placing the child outside the home. Wisconsin Stat. § 48.415(2) requires notice in "one or more court orders under s. 48.345, 48.347, 48.357, 48.363, 48.365, 938.345, 938.357, 938.363, or 938.365 containing the notice required by s. 48.356(2). . . ."
¶ 132. The majority opinion tries to escape this inconsistency by arguing that because the instant case is a termination of parental rights case, we must apply only Wis. Stat. § 48.415(2). However, this termination of parental rights action is based on continuing CHIPS. Under Wis. Stat. § 48.356(2), any written CHIPS order placing a child outside the home *236 must contain written notice of the grounds for termination of parental rights and the conditions for the return of the child. Moreover, Wis. Stat. § 48.415(2) explicitly refers to "the notice required by s. 48.356(2)," and Wis. Stat. § 48.356(2) requires notice in "any written order."
¶ 133. The question is: What, if anything, has changed since the court's unanimous decision in Steven H. ? The answer is the membership of the court.
¶ 134. Four justices who have joined the court since our unanimous decision in Steven H. now simply disagree with Steven H. A change in membership of the court is not a sufficient justification for departing from precedent.[48] "When existing law is open to revision in every case, deciding cases becomes a mere exercise of judicial will, with arbitrary and unpredictable results."[49]
¶ 135. We turn now to the participation of a new member of the court in deciding the instant case. Justice Rebecca G. Bradley's concurring opinion in the instant case explains publicly, for the very first time, her decision to participate in (some, but not all) cases argued before she became a member of the court.
¶ 136. All the decisions (but one) in cases argued and tentatively decided before the new justice's appointment to the court have been released. This *237 writing is to update the status of these cases and compare Justice Rebecca G. Bradley's public approach to the role of a new justice in deciding cases argued and pending on her appointment and the approach taken in the past in this court and in the United States Supreme Court regarding the role of a new justice.
¶ 137. Indeed, the United States Supreme Court is now addressing the implications of the recent death of Justice Antonin Scalia and the possibility that a new justice will be appointed to fill his seat. The eight United States Supreme Court justices are expected to follow the Court's past practice of setting selected cases for reargument to enable a new justice to participate in deciding these cases. The practice has been described previously and we summarize it below.[50]
*238 ¶ 138. The facts and circumstances of the change in membership of the court, the status of cases heard in September and October, and the issues raised by a new justice's joining the court has been set forth previously.[51]
¶ 139. The question of a new justice's participation in cases upon his or her appointment should, we hope, be approached by the court and the justices in a descriptive, analytical, and historical manner, free from divisiveness or offensive posturing, personal attacks, and false accusations.[52]
¶ 140. Engaging in or responding to such personal attacks and accusations neither sheds light on the inquiry before us nor promotes public trust and confidence in the court.
¶ 141. To summarize the historical facts briefly, Justice N. Patrick Crooks passed away on September 21, 2015. Justice Rebecca G. Bradley joined the court on October 9, 2015. During the period between September 8, 2015, and October 9, 2015, when Justice Rebecca G. Bradley was not a member of the court, the court heard oral argument and tentatively decided sixteen cases. See Supreme Court Internal Operating Procedure II.E.[53]
*239 ¶ 142. In 12 of these cases, Justice Rebecca G. Bradley did not participate in the decision of the court.[54] In one of these cases, a case before this court on bypass from the court of appeals, New Richmond News v. City of New Richmond, 2015 WI 106, ¶ 1, 365 *240 Wis. 2d 610, 875 N.W.2d 107, the court's per curiam decision explained the new justice's non-participation as follows: "The court is equally divided on whether to affirm or reverse the judgment of the circuit court for St. Croix County. This case was argued before the full court; however, Justice N. Patrick Crooks passed away prior to the court's decision. Justice Rebecca G. Bradley was appointed to the court after the court's decision, and therefore did not participate."[55]
¶ 143. In three of these cases (including the instant case), Justice Rebecca G. Bradley participated in the decisions.[56]
¶ 144. One of these three cases in which Justice Rebecca G. Bradley participated, namely State v. Matalonis, 2016 WI 7, 366 Wis. 2d 443, 875 N.W.2d 567, was a 4-3 decision overturning the decision of the court of appeals. Amotion for reconsideration was filed alleging that Justice Rebecca G. Bradley's participation violated the defendant's equal protection and due process rights. The motion was denied.
¶ 145. In two of the cases in which Justice Rebecca G. Bradley participated, namely the instant case and State v. Parisi, 2016 WI 10, 367 Wis. 2d 1, 875 N.W.2d 619, the final vote in each of the two cases *241 was 5-2. Thus, the instant case and Parisi present different fact situations than Matalonis, in which Justice Rebecca G. Bradley appears to have cast the deciding vote, and New Richmond News, a bypass case in which the justices were evenly divided without Justice Rebecca G. Bradley's participation.
¶ 146. In prior writings reviewing the experiences and practices of this court and the United States Supreme Court, when a new justice joins the court, the conclusion was as follows: A new justice who did not participate in oral argument does not participate in the decision of the case unless the other members of the court decide that the case should be reargued.[57] The new justice may participate in reargument.
¶ 147. Taking a different and contrasting approach to this prior precedent, Justice Rebecca G. Bradley explains in her concurrence in the instant case that the new justice alone, not the court, decides whether the new justice will participate in a case that has been argued and tentatively decided before the new justice joined the court.
¶ 148. Justice Rebecca G. Bradley's public explanation of whether she will participate in cases argued but not decided before her appointment to the court and her explanation for her decision to avoid reargument are useful and important information for the bench, bar, and public. It sets a new precedent that informs and guides future practices of this court. In *242 sum, it is beneficial to finally have Justice Rebecca Bradley's public explanation in writing as part of the court's record.
* * * *
¶ 149. We conclude that the majority opinion, without special justification, departs from a unanimous, workable, and settled precedent of this court, Waukesha County v. Steven H., 2000 WI 28, 233 Wis. 2d 344, 607 N.W.2d 607, and unjustly terminates the parental rights of Juanita A., a single mother with cognitive difficulties, to her son, Matthew D. In so doing, the majority opinion withdraws language in Steven H. adopting the "last order" notice rule and replaces it with an "at least one order" notice rule.[58]
¶ 150. The majority opinion provides no "special" justification for departing from precedent. The only change since Steven H. is in the membership of this court.
¶ 151. For the reasons set forth, we dissent and write separately.

 See Bartholomew v. Wis. Patients Comp. Fund, 2006 WI 91, ¶ 31, 293 Wis. 2d 38, 717 N.W.2d 216.

 Bartholomew, 2006 WI 91, ¶ 31 (citing Johnson Controls, Inc. v. Employers Ins. of Wausau, 2003 WI 108, ¶ 94, 264 Wis. 2d 60, 665 N.W.2d 257).

 State v. Stevens, 181 Wis. 2d 410, 442, 511 N.W.2d 591 (1994) (Abrahamson, J., concurring) (quoted source omitted).

 Majority op., ¶ 3.

 Waukesha Cnty. v. Steven H., 2000 WI 28, ¶ 25, 233 Wis. 2d 344, 607 N.W.2d 607.

 This order, issued on October 11, 2011, revised an order entered on August 2, 2011, which did not contain written warnings.

 Majority op., ¶ 2.

 Majority op., f 17.

 See majority op., f ¶ 3-4.

 See majority op., ¶¶ 4 & nn.3-4, 17.

 Wisconsin Supreme Court Internal Operating Procedure II.E states that after oral argument," [w]hen possible, the court reaches a decision in each of the cases argued that day, but any decision is tentative until the decision is mandated."

 Wisconsin Stat. § 48.356 provides:
(1) Whenever the court orders a child to be placed outside his or her home, orders an expectant mother of an unborn child to be placed outside of her home, or denies a parent visitation because the child or unborn child has been adjudged to be in need of protection or services under s. 48.345, 48.347, 48.357, 48.363, or 48.365 and whenever the court reviews a permanency plan under s. 48.38(5m), the court shall orally inform the parent or parents who appear in court or the expectant mother who appears in court of any grounds for termination of parental rights under s. 48.415 which may be applicable and of the conditions necessary for the child or expectant mother to he returned to the home or for the parent to be granted visitation.
(2) In addition to the notice required under sub. (1), any written order which places a child or an expectant mother outside the home or denies visitation under sub. (1) shall notify the parent or parents or expectant mother of the information specified under sub. (1).

 Wisconsin Stat. § 48.415(2) provides in relevant part:
(2) Continuing need of protection or services. Continuing need of protection or services, which shall be established by proving any of the following:
(a)l. That the child has been adjudged to be a child or an unborn child in need of protection or services and placed, or continued in a placement, outside his or her home pursuant to one or more court orders under s. 48.345, 48.347, 48.357, 48.363, 48.365, 938.345, 938.357, 938.363 or 938.365 containing the notice required by s. 48.356 (2) or 938.356 (2).

 See Steven H., 233 Wis. 2d 344, ¶¶ 30-32.

 Steven H., 233 Wis. 2d 344, ¶ 22.

 Steven H., 233 Wis. 2d 344, ¶ 30.

 Steven H., 233 Wis. 2d 344, ¶ 3 (emphasis added).

 Steven H., 233 Wis. 2d 344, ¶ 3.

 Majority op., ¶¶ 4, 17.

 Waushara Cnty. v. Lisa K., 2000 WI App 145, ¶ 10, 237 Wis. 2d 830, 615 N.W.2d 204. In Lisa K, the parties also argued that part of the "last order" incorporated by reference the previous notices given to the parent. The court of appeals did not, however, reach the question of whether that satisfied the statutory notice requirements. See Lisa K., 237 Wis. 2d 830, ¶ 2 nn.2-3.

 Lisa K., 237 Wis. 2d 830, ¶ 10.

 For example, permanency hearing orders given on June 5,2013, and May 15,2014, state at first that the court finds the permanency goal is no longer returning Matthew D. to Juanita A.'s home, but later state that the permanency goal remains return to the home.

 The majority opinion suggests at times, however, that notice in the instant case was "adequate." Majority op., ¶¶ 18-19.

 Majority op., ¶ 18.

 Steven H., 233 Wis. 2d 344, ¶ 3.

 St. Croix Cnty. Dep't of Health & Human Servs. v. Michael D., No. 2014AP2431, unpublished slip op., ¶ 13 (Wis. Ct. App. Jan. 16, 2015).

 Unpublished court of appeals decisions may be cited for purposes other than as precedent or authority. See Wis. Stat. § (Rule) 809.23(3). For example, citations to unpublished decisions are permissible to show conflict among the districts of the court of appeals. See State v. Higginbotham, 162 Wis. 2d 978, 996-98, 471 N.W.2d 24 (1991). We are citing unpublished court of appeals cases to show consistency of reasoning and result in court of appeals cases.

 Majority op., ¶ 20.

 Majority op., ¶ 20.

 Majority op., f 20.

 Steven H., 233 Wis. 2d 344, ¶ 32.
Wisconsin Stat. § 48.01, captioned "Title and legislative purpose" provides in relevant part as follows:
(1) This chapter may he cited as "The Children's Code". In construing this chapter, the best interests of the child or unborn child shall always be of paramount consideration. This chapter shall be liberally construed to effectuate the following express legislative purposes:
(a) While recognizing that the paramount goal of this chapter is to protect children and unborn children, to preserve the unity of the family, whenever appropriate, by strengthening family life through assisting parents and the expectant mothers of unborn children, whenever appropriate, in fulfilling their responsibilities as parents or expectant mothers. The courts and agencies responsible for child welfare, while assuring that a child's health and safety are the paramount concerns, should assist parents and the expectant mothers of -unborn children in changing any circumstances in the home which might harm the child or unborn child, which may require the child to be placed outside the home or which may require the expectant mother to be taken into custody. The courts should recognize that they have the authority, in appropriate cases, not to reunite a child with his or her family. The courts and agencies responsible for child welfare should also recognize that instability and impermanence in family relation *230 ships are contrary to the welfare of children and should therefore recognize the importance of eliminating the need for children to wait unreasonable periods of time for their parents to correct the conditions that prevent their safe return to the family.
(ad) To provide judicial and other procedures through which children and all other interested parties are assured fair hearings and their constitutional and other legal rights are recognized and enforced, while protecting the public safety.

 Steven H., 233 Wis. 2d 344, ¶¶ 31, 35.

 See Kenosha Cnty. v. Jodie W., 2006 WI 93, ¶ 8, 293 Wis. 2d 530, 716 N.W.2d 845.

 Majority op., ¶ 17 n.8.

 Majority op., ¶ 15.

 Majority op., f 17.

 Wis. Stat. § 48.415(2)(a)l.

 See Noffke ex rel. Swenson v. Bakke, 2009 WI 10, ¶ 11, 315 Wis. 2d 350, 760 N.W.2d 156.

 See Jankowski v. Milwaukee Cnty., 104 Wis. 2d 431, 439, 312 N.W.2d 45 (1981) (" '[SJtatutes should be construed so as to avoid constitutional objections.'") (quoting Niagara of Wis. Paper Corp. v. DNR, 84 Wis. 2d 32, 50, 268 N.W.2d 153 (1978)).

 See majority op., ¶ 4.

 See majority op., f ¶ 4 & nn.3-4, 17.

 Bartholomew, 293 Wis. 2d 38, ¶ 32 (citations omitted).

 State v. Luedtke, 2015 WI 42, ¶ 40, 362 Wis. 2d 1, 863 N.W.2d 592 (quoting State v. Ferron, 219 Wis. 2d 481, 504, 579 N.W.2d 654 (1998)).

 Bartholomew, 293 Wis. 2d 38, ¶ 33.

 See 2011 Wis. Act 271; 2011 Wis. Act 257; 2009 Wis. Act 185; 2009 Wis. Act 94; 2007 Wis. Act 116; 2007 Wis. Act 45; 2005 Wis. Act 293; 2005 Wis. Act 277; 2003 Wis. Act 321; 2001 Wis. Act 109; 2001 Wis. Act 2.

 See Tex. Dep't of Housing & Cmty. Affairs v. Inclusive Communities Project, Inc., 135 S. Ct. 2507, 2520 (2015) ("Congress' decision ... to amend the FHA while still adhering to the operative language ... is convincing support for the conclusion that Congress accepted and ratified the unanimous holdings of the Court of appeals ...."); see also Antonin Scalia & Bryan Garner, Reading Law: The Interpretation of Legal Texts 322 *235 (2009) ("If a word or phrase has been authoritatively interpreted by the highest court in a jurisdiction ... a later version of that act perpetuating the wording is presumed to carry "forward that interpretation".).

 See majority op., ¶ 25.

 See Johnson Controls, 264 Wis. 2d 60, ¶ 138 ("No change in the law is justified by 'a change in the membership of the court or a case with more egregious facts.'") (quoting Stevens, 181 Wis. 2d at 441-42 (Abrahamson, J., concurring)).

 Luedtke, 362 Wis. 2d 1, ¶ 40 (quoting Schultz v. Natwick, 2002 WI 125, ¶ 37, 257 Wis. 2d 19, 653 N.W.2d 266).

 See New Richmond News v. City of New Richmond, 2015 WI 106, ¶ 24, 365 Wis. 2d 610, 875 N.W.2d 107 (Abrahamson, J., concurring) (describing the past practice of the United States Supreme Court following the resignation, retirement, or death of a member of the Court).
Media accounts following the recent death of Justice Antonin Scalia concur in the descriptions of the practice in the United States Supreme Court in prior separate writings on this issue. See Adam Liptak, Deadlocks and Rearguments: What's Ahead for the Supreme Court, N.Y. Times (Feb. 18, 2016) ("Q. Would a new justice be able to vote on cases argued before he or she was confirmed? A. No. Cases in which the current justices were deadlocked, 4 to 4, would require rearguments to allow a new justice to participate.") (emphasis added); Adam Liptak, Scalia's Absence Is Likely to Alter Court's Major Decisions This Term, N.Y. Times (Feb. 14, 2016); see also Tom Goldstein, Tie votes will lead to reargument, not affirmance, SCOTUSblog (Feb. 14, 2016, 3:14 PM), http://www.scotusblog.com/2016/02/tie-votes-will-lead-to-reargument-not-affirmance/.

 See New Richmond News, 365 Wis. 2d 610, ¶ 7 (Abrahamson, J., concurring); State v. Matalonis, 2016 WI 7, ¶ 70, 366 Wis. 2d 443, 875 N.W.2d 567 (Abrahamson, J., dissenting) (quoting New Richmond News, 365 Wis. 2d 610, ¶ 7).

 The election for Justice Rebecca G. Bradley's seat was held on Tuesday, April 5, 2016.

 It was announced at oral arguments on September 17, 2015, and September 18, 2015, that Justice N. Patrick Crooks would not be attending oral arguments in the six cases argued and tentatively decided on those dates (including the instant case). It was announced that Justice N. Patrick Crooks would *239 participate in these cases by watching oral arguments on WisconsinEye and discussing the cases in conference via telephone.
Thus counsel were aware of the nature of Justice N. Patrick Crooks' participation in the cases argued on September 17, 2015 and September 18, 2015. Counsel did not object.
There is precedent in this court for a member of the court to do as Justice Crooks explained he would do. There is also precedent in this court for a member of the court who has not attended oral argument to decline to participate in deciding the case.
In contrast, counsel did not know that Justice Rebecca G. Bradley, who was appointed to the court after oral argument, would be participating in the cases heard and tentatively decided prior to her appointment. Until the decisions were released, counsel had no opportunity to ask for reargument with Justice Rebecca G. Bradley present or to object to Justice Rebecca G. Bradley's participation without reargument.

 See In re Marriage of Meister, 2016 WI 22, ¶ 49, 367 Wis. 2d 447, 876 N.W.2d 746; State v. Smith, 2016 WI 23, ¶ 59, 367 Wis. 2d 483, 878 N.W.2d 135; United Food & Commercial Workers Union v. Hormel Foods Corp., 2016 WI 13, ¶ 107, 367 Wis. 2d 131, 876 N.W.2d 99; Wis. Pharmacal Co., LLC v. Neb. Cultures of Cal., Inc., 2016 WI 14, ¶ 86, 367 Wis. 2d 221, 876 N.W.2d 72; Burgraff v. Menard, Inc., 2016 WI 11, ¶ 81, 367 Wis. 2d 50, 875 N.W.2d 596; Hoffer Props., LLC v. DOT, 2016 WI 5, ¶ 48, 366 Wis. 2d 372, 874 N.W.2d 533; State v. Valadez, 2016 WI 4, ¶ 56, 366 Wis. 2d 332, 874 N.W.2d 514; State v. Dumstrey, 2016 WI 3, ¶ 52, 366 Wis. 2d 64, 873 N.W.2d 502; Winnebago Cnty. v. Christopher S., 2016 WI 1, f 58, 366 Wis. 2d 1, 878 N.W.2d 109; Wis. Dep't of Justice v. Wis. Dep't of Workforce Dev., 2015 WI 114, ¶ 60, 365 Wis. 2d 694, 875 N.W.2d 545; New Richmond News, 365 Wis. 2d 610, ¶ 4; State v. Iverson, 2015 WI 101, 1 62, 365 Wis. 2d 302, 871 N.W.2d 661.

 New Richmond News, 365 Wis. 2d 610, ¶ 1. The per curiam opinion went on to explain that Justice Shirley S. Abrahamson, Justice Ann Walsh Bradley, and Justice David T. Prosser would affirm. Chief Justice Patience Drake Roggen-sack, Justice Annette Kingsland Ziegler, and Justice Michael Gableman would reverse.

 The other two cases are State v. Parisi, 2016 WI 10, 367 Wis. 2d 1, 875 N.W.2d 619; and State v. Matalonis, 2016 WI 7, 366 Wis. 2d 443, 875 N.W.2d 567.
A decision in one case (argued, like the instant case, on September 17, 2015) has not yet been released: State v. LeMere, No. 2013AP2433-CR.

 Audio recordings of oral arguments in this court have been available for many years. Likewise, audio recordings of oral arguments in the United States Supreme Court have been available since 1955. See Oyez, http://www.oyez.org/about (" [Oyez] is a complete and authoritative source for all of the Court's audio since the installation of a recording system in October 1955.").

 See majority op., ¶ 17.